In re GRAND CHEVROLET, INC., and related entities including: 1. Grand Motors, Inc.; 2. Grand Wilshire Finance Corporation; 3. Grand Rizal Finance Corporation; 4. Grand Wilshire Capital, Inc., Debtors.

INTERNAL REVENUE SERVICE,
Appellant,

v.

Irving SULMEYER, Chapter
11 Trustee, Appellee.

No. CV–92–6966–JMI.

United States District Court,
C.D. California.

April 1, 1993.

Terree A. Bowers, Mason C. Lewis, Darwin Thomas, U.S. Attys., Los Angeles, CA, for appellant.

Max H. Rush, Steven R. Wainess, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, CA, for appellee.

## ORDER VACATING BANKRUPTCY COURT'S DECLARATORY RELIEF

IDEMAN, District Judge.

IT IS HEREBY ORDERED:

Appellant INTERNAL REVENUE SERVICE [hereinafter "I.R.S."] appeals from a declaratory judgment by the Bankruptcy Court authorizing IRVING SULMEYER [hereinafter "Trustee"] to file a consolidated tax return. This Court VACATES the Bankruptcy Court's judgment because the Bankruptcy Court lacked jurisdiction.

## BACKGROUND FACTS

Grand Wilshire Finance Corporation filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 4, 1988. Grand Rizal Finance Corporation also filed under Chapter 11 on August 4, 1988. Grand Chevrolet, Inc. filed under Chapter 11 on August 5, 1988. Grand Motors, Inc. filed under Chapter 11 on August 8, 1988. Grand Wilshire Capital, Inc. filed on September 14, 1988.

Shortly after the filing of each case, IRVING SULMEYER was appointed Chapter 11 Trustee and continues to serve in that capacity. All five cases are now subject to joint administration as ordered by the Bankruptcy Court in the Central District.[1]

The relationship between the five debtor entities involved numerous intercompany transfers and large cash transfers. The debtor entities held themselves out to creditors as a single entity, through the filing of fictitious business statements with the County of Los Angeles. The fictitious non-entity was referred to as Grand Wilshire Group Companies and was created as an elaborate front to convince investors and creditors that various "Grand" companies were part of one enterprise.

There was a common pattern of ownership among the debtor entities; Emanuel Reodica served as president and chairman of the board of all of the entities. Mr. Reodica owned one hundred percent of Grand Chevrolet's stock, approximately forty-three percent of Grand Motors, and five percent of Grand Wilshire Finance. Grand Chevrolet owned forty-two percent of Grand Wilshire Finance's stock.

## ADVERSARY PROCEEDING

On March 16, 1992, the Trustee filed a complaint in Bankruptcy Court and requested a declaration that the consolidated debtor estates may file a consolidated tax return for federal income tax purposes. Paragraphs six and seven of the complaint define the "controversy" alleged by the Trustee:

> [Due to] inordinate expense[s] to separate the financial affairs of the various debtor estates, ... the Trustee has requested the estate employ accountants to prepare and file necessary tax returns for the estate on a consolidated or combined basis. The Trustee contends that to file tax returns on any other basis than the basis of the consolidated estates would substantially defeat the purpose of consolidation, be unequitable, and re-

---

1. Due to the complex financial status of the debtor entities and the expense to separate their activities, the Bankruptcy Court consolidated the five entities on June 11, 1990 to avoid any detriment to the overall recovery of all creditors.

sult in undue expense without guarantee of greater accuracy.

Nonetheless, on the advice of the estate's certified public accountants, ... the Trustee is informed and believes and therefore alleges that the Internal Revenue Service contends and maintains that an Order of Substantive Consolidation does not make the various debtor estates members of an affiliated group as defined in Internal Revenue § 1504 which is a prerequisite for filing consolidated returns by domestic corporations.

Complaint for Declaratory Relief, p. 3, lines 15–28; p. 4, lines 1–13.

The Trustee stipulated that the individual debtor estates comprising the consolidated debtor are not an "affiliated group" as defined by section 1504 of Title 26 of the United States Code.

The Bankruptcy Court determined that additional accounting activities would be necessary in order to separate the financial affairs of each debtor. Such accounting would be expensive and inefficient because certain records of the debtor companies are missing. Furthermore, accountants employed by the Trustee have already incurred $650,000 in an effort to account separately for the activities of the individual debtors and additional expenditure of $650,000 to $1,000,000 would be necessary to differentiate between the numerous intercompany transfers.

On October 9, 1992, the Bankruptcy Court authorized the debtor estates to file a consolidated tax return, as if the consolidated debtor was one taxable entity succeeding to all tax attributes (including the net operating loss carryovers of each of the heretofore separate taxable debtor estates).

The I.R.S. subsequently filed an appeal with this Court that presents two issues: (1) whether the Bankruptcy Court had jurisdiction to authorize the consolidated debtor to file a consolidated tax return, and (2) whether a non-affiliated group may file a consolidated tax return. Because this Court HOLDS that the Bankruptcy Court lacked jurisdiction to authorize the filing of a consolidated tax return, this Court does not get to the merits of the second issue.

## DISCUSSION

I. The overriding question before this Court is when should a trustee be allowed to seek determination of a question of law that ultimately impacts tax liability? And what, if any, requirements must be met before such determination is sought?

Additionally, preliminary questions concern whether the Bankruptcy Court ruled on "the amount or legality" of Plaintiff's tax liability, pursuant to section 505, or whether another statute conferred jurisdiction upon the Bankruptcy Court?

### A. *Subject Matter Jurisdiction*

Section 505(a)(1) of Title 11 of the United States Code provides a wide grant of authority to bankruptcy courts to determine the *amount* or *legality* of any tax, regardless of prior assessments and/or payments. Section 505 does not contain any specific language allowing a bankruptcy court to render declaratory judgments concerning the nature or amount of tax liabilities that may arise in the future, or to determine one issue that will affect the amount of a tax liability on a tax return not yet filed. Moreover, section 505(b)(1) provides that "[a] trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return ... and a request...."

As a general rule, the jurisdiction conferred upon bankruptcy courts by district courts cannot be more jurisdiction than the district court itself possessed. 28 U.S.C. § 157. Federal courts have jurisdiction to grant declaratory relief pursuant to section 2201 of Title 28 of the United States Code, which provides:

In a case of *actual controversy* within its jurisdiction, *except* with respect to *Federal taxes other than* actions brought under ... *section 505,* ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration. (emphasis added).

This Court must make two inquiries in order to determine whether the Bankruptcy Court exceeded its jurisdiction in rendering declaratory relief. First, this Court must decide whether there was an "actual controversy" before the Bankruptcy Court. Second, this Court must consider whether section 505 is applicable to the tax question brought before the Bankruptcy Court.

1. "Actual Controversy"

While the difference between an abstract question and an "actual controversy" contemplated by section 2201 is necessarily one of degree, the basic question is whether the facts alleged "show a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

█ An action for declaratory judgment is untimely when a dispute has not ripened into an actual controversy. The standards which guide this Court were set out in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967):

> [The] basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

█ Here, the Trustee had not attempted to file taxes, albeit not mandated under section 505(b). Nor does it appear that the I.R.S. denied affirmatively the tax status sought by the Trustee in any way other than "maintain[ing]" that an Order of Substantive consolidation does not make the various debtor estates members of an affiliated group, as defined in the Internal Revenue Code, for the purpose of filing a consolidated tax return." Defendant's Answer, p. 3, lines 3–8. Even if Appellant's policy was potentially adverse to the Trustee's position, more than a belief that the I.R.S. will deny the consolidated status is necessary to ripen the claim. Furthermore, there is no allegation by the Trustee that the I.R.S. has even assessed taxes against the debtor estates.

█ The tax issue before the Bankruptcy Court was not fit for judicial decision. Pursuant to section 505, a bankruptcy court has the jurisdiction only to determine tax liabilities; there is no grant of jurisdiction to decide issues that are antecedent to the determination of tax liability. In effect, the declaratory relief granted by the Bankruptcy Court was the equivalent of an advisory opinion regarding filing status, which undoes the law of the Internal Revenue Code, but does not determine the debtors' tax liability. The ripeness doctrine was meant to prevent just such a situation.

The dilemma confronting the Trustee is twofold. On one hand, the Trustee sought to save money by not having to ferret out the financial situation of each debtor entity. On the other hand, the Trustee was informed of an I.R.S. policy, based on statutory authority, that may prevent the filing of one consolidated tax form for all of the debtors.

Faced with such a dilemma, the Trustee had choices other than proceeding to the Bankruptcy Court for declaratory relief. For example, the Trustee could have requested an I.R.S. administrative opinion concerning filing status, or filed a consolidated return to see if a dispute arose. Thus, the case as it was heard by the Bankruptcy Court was not ripe for judicial determination because there was no "actual controversy" to be decided.

**300**

2. "Except federal taxes other than Section 505"

■ Appellant I.R.S. offers a persuasive argument that, because this dispute is not pertaining tax liability as required under section 505, then it should be excepted from section 2201. *See infra.* As discussed above, this dispute concerns matters antecedent to the determination of tax liability. The Trustee contends correctly that section 505 was created to expedite the adjudication of tax liability, but fails to explain how determination of tax status is within the meaning of "tax liability." Tax status may impact tax liability, but the two are not a part of the same inquiry.

■ Tax status is one of many questions that can ultimately affect a taxpayer's liability. Here, the Trustee did not propose an amount representing the liability of the debtor estates if allowed to file a consolidated return. Rather, the Trustee sought advice on one of many antecedent issues to the determination of tax liability. Accordingly, this Court HOLDS that the Trustee's declaratory action was a federal tax issue, not a section 505 tax liability issue.

■ Ultimately, this preliminary dispute may develop into a tax liability controversy and, at that point, even if the Trustee has yet to file a tax return, section 505 will vest the Bankruptcy Court with jurisdiction over it. Until the jurisdictional prerequisite of section 505 is met, (the bankruptcy court may "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax"), tax issues antecedent to tax liability determination are excepted from section 2201. Because the tax issue herein concerns "Federal taxes [not] ... brought under section 7248 ... or a proceeding under section 505 or 1146 of title 11," both bankruptcy courts and district courts lack jurisdiction to render a declaratory judgment under the facts of this case. Accordingly, this Court VACATES the Bankruptcy Court's Order.

**B.** *Sovereign Immunity:*

The Trustee contends that section 505 waives the sovereign immunity of the United States of America. However, as discussed above, the prerequisites required by section 505 have not been alleged or evidenced in the facts before this Court. Therefore, the Trustee's argument need not be considered at this time.

Accordingly, this Court FINDS the Trustee's sovereign immunity argument MOOT because the prerequisite tax liability dispute has not been alleged. Similarly, the issue of whether a non-affiliated group may file a consolidated return is MOOT.

IT IS SO ORDERED.