**In re Luciano POPA, Debtor.**

**Bankruptcy No. 96 B 22630.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 10, 1998.

Ronald R. Peterson, David R. Seligman, Jenner & Block, Chicago, IL, Trustee for Bankruptcy Estate.

Xiaoming Wu, Peter Francis Geraci, Chicago, IL, for Debtor.

D. Patrick Mullarkey, Tax Division (DOJ), Washington, DC, District Counsel, Internal Revenue Service, District Director, Internal Revenue Service, Samuel D. Brooks, Stacy Hallett, Trial Attorney, Tax Division, Assistant U.S. Attorney, Chicago, IL, for IRS.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

### INTRODUCTION

The Debtor filed a motion to compel the trustee to abandon the estate's interest in his residence. He contends that, after deducting his and his wife's homestead exemptions, there is no equity in the property. The chapter 7 trustee objected on the grounds that the non-debtor spouse, because she is not in title, is not entitled to a homestead exemption. The Trustee also requested a determination of the tax liability, if any, upon the sale of the property under § 505.[1] The Internal Revenue Service objected to the Trustee's request, arguing that the Court does not have jurisdiction to decide the tax issue because, since the property has not been sold, there is no case or controversy. Alternately, the IRS argues that the Trustee is not entitled to exclude the gain from a sale of the residence under § 121 of the Internal

---

1. All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et. seq., unless otherwise noted.

Revenue Code ("IRC"), 26 U.S.C § 121. For the reasons set forth below this Court finds that a spouse who is not in title to real property is not eligible for a homestead exemption. The Court also finds that it has jurisdiction to decide the tax issue and that the Trustee is entitled to use the § 121 IRC exclusion. Accordingly, there is equity in the property and the Trustee will not be compelled to abandon the property. The Debtor's Motion is therefore denied.

## BACKGROUND

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on August 8, 1996, and received a discharge on December 19, 1996. The Debtor scheduled his principal residence with an estimated fair market value of $150,000 (the "Property"). The Property is subject to a first mortgage of $109,668.20.[2] In addition, any sale would be subject to costs. The outcome of a sale would be approximately as follows:

| | | |
|---|---|---|
| Fair Market Value | | $150,000.00 |
| Less: | | |
| Mortgage | $109,668.20 | |
| Debtor's Homestead | $ 7,500 | |
| Costs of Sale | | |
| Broker's Commission 6% | $ 9,000 | |
| Closing Costs | $ 4,500 [3] | |
| Trustee's fee | $ 10,750 | ($141,418.20) |
| Equity Available if spouse if spouse not entitled to exemption | | $ 8,581.80 |

The Debtor's schedules listed $19,274 in unsecured debt. The equity in the home would thus provide a distribution of approximately 45¢ on the dollar assuming all creditors filed claims in the scheduled amounts. If the Debtor's spouse is also entitled to a homestead exemption, the equity available for distribution to unsecured creditors would be reduced by another $7,500 to $1,081.80. Under this scenario the distribution would be reduced to less than 6¢ on the dollar.

Neither of these scenarios include any deduction for capital gain taxes due upon a sale. The Debtor's cost basis in the property is approximately $70,000.[4] The capital gains tax would be about $12,000. Clearly if the estate is required to pay taxes on the gain realized on the sale of the Property, there

would be no equity available to distribute to creditors. The trustee would therefore be required to abandon the property, and the Motion would be granted.

## DISCUSSION

### Availability of Homestead Exemption to a Spouse, Not In Title [5]

■ Illinois provides for a homestead exemption as follows:

> [e]very individual is entitled to an estate of homestead to the extent in value of $7,500, in the farm or lot of land and buildings thereon, a condominium or personal property, owned or rightly possessed by lease or otherwise and occupied by him or her as a residence . . .; and such homestead, and all right and title therein, is exempt from

**2.** The Trustee does not dispute the Debtor's estimated fair market value or the amount of the mortgage.

**3.** The Trustee estimated the miscellaneous closing costs at $10,500 or 7%; we are using the Debtor's lesser estimate.

**4.** The Trustee alleges that the Debtor carried over his $70,000 cost basis from a prior home, by using the proceeds from the sale of that home to purchase the Property. The Court will accept that figure as the basis in the Property for purposes of this motion.

**5.** The Trustee argues that if the Debtor's wife wants to claim an exemption she must file a claim or complaint. But the issue is whether the estate should abandon the house. That requires a consideration of the likely outcome of a bankruptcy sale, including the possibility of a distribution to the Debtor's wife. The issue is therefore properly raised by the motion before the Court.

attachment, levy or judgment sale for the payment of his or her debts or other purposes. [735 ILCS 5/12–901].

The Debtor relies upon *In re Reuter*, 56 B.R. 39 (Bankr.N.D.Ill.1985) in support of his argument that a spouse is entitled to a homestead exemption even when the spouse does not have title in the real estate. In *Reuter* the court recognized that Illinois courts have interpreted the phrase " 'owned or rightly possessed by lease or otherwise,' to mean that the debtor had to possess title or some ownership interest in the property." *Id.*, 56 B.R. at 40. Notwithstanding that interpretation, the court determined that the Homestead Exemption Act must be read in conjunction with the Rights of Married Women Act (750 ILCS 65/16) and the Release of Homestead Act (765 ILCS 5/27). When read together, the court concluded, those laws entitled a spouse to claim a homestead exemption even without any ownership interest in the real property.

Only two cases have addressed this issue since *Reuter* and both have rejected the result. *In re Owen*, 74 B.R. 697 (Bankr. C.D.Ill.1987); *In re Hartman*, 211 B.R. 899 (Bankr.C.D.Ill.1997). In a thorough analysis, the court in *Hartman* considered the conflicting results and concluded that the homestead exemption requires the spouse to have an ownership interest in the property. The court determined that *Reuter* relied upon "circumspect" case authority, by considering case law predating the amendment of the Homestead Exemption Act. The court also concluded that the Rights of Married Women Act and the Release of Homestead Act do not create interests in property. *Hartman*, 211 B.R. at 904.

This Court agrees with the analysis and result in *Hartman*. The Homestead Exemption Act requires the spouse to have an ownership or leasehold interest in the property before an exemption is allowed. The Married Women's Act only requires the spouse who owns the homestead to provide comparable shelter. The Release of Homestead Act does not create any interest that did not

otherwise exist, but provides that if one does exist, one spouse cannot release it for the other. Thus neither of the latter two Acts creates an interest in property. *Hartman*, 211 B.R. at 904.

Accordingly, this Court finds that only the Debtor, and not his spouse, is entitled to a $7,500 homestead exemption.

**Availability of § 121 of the IRC Exclusion in a Sale by the Estate**

*Jurisdiction—Case or Controversy Requirement*

■ Before addressing the merits of the tax issue, this Court must first determine if it has jurisdiction to decide the matter. A federal court may not render advisory opinions; rather it may only decide actual cases or controversies. *U.S. Constitution Art. III, § 2; Ernst & Young v. Depositors Protection Corp.*, 45 F.3d 530 (1st Cir.1995); *Kilen v. United States*, 129 B.R. 538, 543 (Bankr. N.D.Ill.1991). The IRS argues that because the Trustee has not sold the Property, there is no case or controversy and this Court cannot render an advisory opinion on the tax issue.

■ "The difference between an abstract question calling for an advisory opinion and a ripe 'case or controversy' is one of degree, not discernible by any precise test." *Wisconsin's Environmental Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407, 410 (7th Cir.1984), *cert. denied*, 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985). There is a three part test for determining whether an issue is "ripe" for determination: 1) there must be a substantial controversy; 2) between parties having adverse legal interests; and 3) of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Wisconsin's Environmental*, 747 F.2d at 410.

The IRS argues that the Trustee has merely posed a hypothetical set of facts and asked this Court for an advisory opinion. In making that argument the IRS has isolated the Trustee's "Request for Determination of Tax Liability under 11 U.S.C. § 505," [6] ("Re-

---

6. Section 505(a)(1) provides: "Except as provided in paragraph (2) of this subsection, the court

may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any

quest") from the actual matter that is before this Court. This matter was brought before the Court on the Debtor's motion to compel the Trustee to abandon the Property under § 554(b).[7] The Debtor argued that there was no equity in the Property. The Debtor did not consider the tax consequences of a sale of the Property by the Trustee in his motion, but only the availability of the homestead exemption. The Trustee, however, properly raised the tax issue in his Response. Part of the confusion concerning the case or controversy requirement may stem from the "Request" which suggests that the Trustee was independently asking this Court to determine the tax consequences of a hypothetical sale. In reality that "Request" was unnecessary because, as the Trustee understood, this Court must determine the tax consequences of a sale to decide the Debtor's motion for abandonment. The Debtor finally recognized the importance of the tax issue by arguing in his reply memorandum of law that the § 121 IRC exclusion is unavailable to the estate.

Applying the three part test to this matter, the issue is "ripe" for determination. First, there is a substantial controversy concerning the amount of equity in the Property. In order for this Court to make a complete determination of the amount of equity in the Property and whether the Trustee should be compelled to abandon it, it must consider all applicable costs of a sale, including capital gain taxes, if any, due upon a sale. This requires the Court to decide if the exclusion under § 121 IRC is available to a bankruptcy trustee.

Next, the controversy is between parties having adverse legal interests. The United States and the Debtor have both taken the

position that the § 121 IRC exclusion is not available, for different reasons. The Debtor's interest is in having this Court determine there is no equity in the Property so he can retain it. The IRS wants to ensure that the maximum taxes are paid if the Property is sold. The Trustee, on the other hand, has an interest in maximizing equity in order to make a distribution to creditors of this estate.

Finally, the controversy is of sufficient immediacy to warrant this Court issuing a declaratory judgment on the availability of the § 121 IRC exclusion. It is only by making this determination that this Court can decide if the property is "burdensome" or "of inconsequential value" to the estate and thus the ultimate issue of abandonment under § 554.[8]

The cases relied upon by the IRS in support of its argument that there is no case or controversy are inapposite. *See In re Grand Chevrolet, Inc.*, 153 B.R. 296 (C.D.Cal.1993); *Matter of Inter Urban Broadcasting of Cincinnati*, 180 B.R. 153 (Bankr.E.D.La.1995). In neither of those cases was the issue of the liability for taxes inexorably tied to a contested matter then pending before the Court. This case is more analogous to *Kilen*, where the court found that the issue of the dischargeability of trust fund taxes affected distributions under a confirmed plan of reorganization and therefore an "actual controversy" existed.

The IRS also argues that this Court lacks jurisdiction because the Trustee is not seeking a determination of a tax *liability;* rather he is seeking a determination of entitlement to an exclusion, citing *Grand Chevrolet* and *Inter Urban Broadcasting.* That argument is equally misplaced. Section 505(a) limits

---

addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." Section 505 creates a exception to the Declaratory Judgment Act for declaratory judgments involving tax liabilities. It does not, however, eliminate the "case or controversy" requirement. *See 28 U.S.C. § 2201; Kilen*, 129 B.R. at 543.

7. Section 554(b) provides: "On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any

property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

8. Moreover, once this Court concluded that the Debtor's spouse could not claim a homestead exemption, the issue of the amount of tax due upon a sale became outcome determinative to the Debtor's motion: if no tax would be due then there is equity in the Property and the Court must deny the Debtor's motion; if, on the other hand, taxes would be due, there is no equity and this Court would order the Trustee to abandon the Property.

the court's determination to tax liabilities. The issue of whether the Trustee is entitled to use the § 121 IRC exclusion determines whether the estate's tax *liability* is zero or taxed at the applicable capital gain rate. This is unlike *Grand Chevrolet* and *Inter Urban Broadcasting* where the courts were asked to determine the debtor's tax *status*.

Accordingly, this Court finds that the issues presented by the Debtor's Motion to Compel Abandonment, including the issue of the availability of the § 121 IRC exclusion, are ripe for determination and within this Court's jurisdiction under Article III of the Constitution and § 505(a).

**Availability of § 121 of the IRC Exclusion in Bankruptcy**

■ The Property is property of the estate under § 541. There is no dispute that a bankruptcy estate is liable for any tax due as the result of the sale of an estate asset. Section 121 IRC, however, allows a taxpayer to exclude up to $250,000 of gain from the sale of the taxpayer's primary residence every two years, if the taxpayer has owned and lived in the residence two of the preceding five years.[9] The dispute is whether the estate (and therefore the creditors) can take advantage of that exclusion.

Section 121 has recently been amended. The "Original § 121" provided that taxpayers over 55 years of age were entitled to a one-time exclusion of $125,000 on the sale of the taxpayer's residence if the taxpayer had used the property as his or her principal residence for three of the last five years. No case has addressed the issue of whether a bankruptcy estate qualifies for the exclusion under the current § 121. The two cases that addressed this issue under Original § 121, however, both concluded that a bankruptcy trustee could not use the exclusion. *In re Mehr,* 153 B.R. 430 (Bankr.D.N.J.1993); *In re Barden,* 205 B.R. 451 (E.D.N.Y.1996), *aff'd,* 105 F.3d 821 (2nd Cir.1997). For the reasons discussed below this Court declines to follow the *Mehr* and *Barden* decisions and instead finds that a bankruptcy trustee is eligible to use the § 121 IRC exclusion.

The guidelines for the taxation of a Chapter 7 bankruptcy estate are in 26 U.S.C. § 1398 ("§ 1398 IRC").[10] The following subsections are relevant to the current analysis:

(c) Except as otherwise provided by this section, the taxable income of the [Chapter 7 bankruptcy] estate shall be computed in the same manner as for an individual. The tax shall be computed on such taxable income and shall be paid by the trustee.

. . . .

(f)(1) A transfer (other than by sale or exchange) of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be with respect to such asset.[11]

. . . .

(g) *Estate Succeeds to Tax Attributes of Debtor.*—The estate shall succeed to and

---

**9.** § 121 IRC provides in relevant part as follows: "(a) Exclusion.—Gross income shall not include gain from the sale or exchange of property if, during the 5–year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating 2 years or more."

**10.** The IRS cites two general rules of construction that it argues this Court should follow in deciding this issue. First "exclusion sections are to be strictly construed against the taxpayer." *Commissioner v. Schleier,* 515 U.S. 323, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995). Similarly, "exemptions from taxation are not to be implied, they must be unambiguously proved." *United States v. Wells Fargo Bank,* 485 U.S. 351, 354, 108 S.Ct. 1179, 1181–82, 99 L.Ed.2d 368 (1988). Although the Court recognizes the validity of these rules of construction, it does not agree that they are pivotal here. Those rules apply to determining if the eligibility requirements of § 121 IRC have been satisfied, but not to determining if those attributes pass to the estate via § 1398 IRC. The usual rules of construction apply to § 1398, and the plain language of that section authorizes the Trustee to take advantage of the § 121 IRC exclusion. Indeed, even if the rules urged by the IRS were applicable, the result would be the same.

**11.** There is no dispute that under this section the transfer of the Property from the Debtor to the estate by reason of the filing of the bankruptcy petition (see, § 541(a)) is not itself a taxable transaction.

take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—

. . . .

(6) *Basis, holding period, and character of assets.*—In the case of any asset acquired (other than by sale or exchange) by the estate from the debtor, the basis, holding period, and character it had in the hands of the debtor.

The authority for the estate's use of the § 121 IRC exclusion is provided by these provisions. Subsection (g)(6) provides that the estate succeeds to the Debtor's holding period. If the debtor has owned the property for the time required in § 121 IRC, the estate succeeds to that holding period. Next, § 1398(g)(6) provides that the estate succeeds to the "character" of the asset "it had in the hands of the debtor." "Character" is not defined by § 1398 IRC,[12] but the characteristics of the Property relevant to the tax code include its use as a principal residence for at least two of the past five years. Those attributes constitute the "character it had in the hands of the debtor." Because the estate succeeds to those attributes, it qualifies to use the § 121 IRC exclusion.

This conclusion is also compelled by §§ 1398(c)(1) and (f)(1). Subsection (c)(1) says that an estate is taxed like an individual. Subsection (f)(1) says that the transfer of property from the debtor to the estate is not a disposition for tax purposes, and "the estate shall be treated as the debtor would be with respect to such asset." When those provisions are read with subsection (g)(6), the only plausible conclusion is that the estate is liable for the same tax, and entitled to the same exclusion, as the debtor would be on the sale of the Property.

This Court's conclusion conflicts with the two reported decisions on this issue, *Mehr* and *Barden.* The different result stems in part from the amendments to § 121 IRC, but primarily from this Court's disagreement with the analysis of § 1398 IRC applied by the other courts. Section 121 IRC no longer requires that the taxpayer be a least 55 years of age. That is a requirement that the estate itself cannot satisfy and is not an attribute of the *asset* that the estate succeeds to under § 1398(g)(6). Neither *Mehr* nor *Barden* discussed the effect of § 1398(f)(1) with respect to that requirement, but it is no longer a factor.

Original § 121 IRC also only permitted the taxpayer to make a once in a lifetime election to use the exclusion. Both *Mehr* and *Barden* noted that the reason for this requirement was a "policy concern" to "help promote savings for retirement." *Barden,* 205 B.R. at 453; *Mehr,* 153 B.R. at 434. Whether or not that was an appropriate basis on which to decide an issue of statutory construction, § 121 IRC in its current form permits taxpayers to use the exclusion any time they otherwise qualify.

More significant than these changes in the tax law, however, are the differences in the construction of § 1398 IRC. The *Mehr* and *Barden* courts do not discuss § 1398(f)(1) in any meaningful way at all. Their analysis of § 1398(g)(6) is not persuasive. They point out that subsections 1398(g)(1)—(5) specify particular "items" to which the estate succeeds—net operating loss carryovers, charitable contribution carryovers, recovery of tax benefit items, credit carryovers, and capital loss carryovers. The *Mehr* and *Barden* courts treat this list as exhaustive. Because the § 121 IRC exclusion was not one of the items specifically enumerated in § 1398 IRC, they conclude that Congress has not allowed bankruptcy estates to use it.

The problem with this reasoning (apart from ignoring § 1398(f)(1))is that it does not give full effect to § 1398(g)(6). In *Mehr* the court concluded that "character" in subsection (g)(6) "generally refers to whether an asset is a capital asset, ordinary asset or a § 1231 asset."[13] The court went on to say

---

12. It's ordinary meaning is, " . . . . a distinctive trait, quality, or attribute; essential quality; nature; kind or sort . . ." *Webster's New World Dictionary* (2d ed. 1984).

13. A § 1231 IRC asset is property used in a trade or business. The court did not explain why, if the word "character" would refer to the use of an asset for business purposes, it would not also include use as a residence.

that the purpose of the provision is only to enable the trustee to use the "tax attributes enumerated in § 1398(g) such as capital loss carryovers." 153 B.R. at 437. In other words, subsection (g)(6) serves only to supplement the particular tax items referred to in the preceding five subsections, so that a bankruptcy estate will be able to take advantage of them.

This reasoning is faulty for a number of reasons. First, the court does not explain why subsection (g)(6) would even help a trustee take advantage of the specifically enumerated items. None of them appear to even require consideration of the "basis, holding period, and character" of an asset "acquired by the estate from the debtor," which is what subsection (g)(6) deals with. If, for example, a debtor were entitled to a capital loss carryover, the debtor presumably would not even have owned the pertinent asset at the time of bankruptcy. Otherwise there would be no capital loss to carryover. So nothing in subsection (g)(6) would assist the trustee in the use of a capital loss carryover. And none of the other items listed in subsections (g)(1) through (5) (such as carryovers of net operating losses and charitable contributions) seem to require consideration of the attributes mentioned in (g)(6). Moreover, limiting the application of subsection (g)(6) to the specifically enumerated items renders it superfluous. The first five subsections already permit the estate to succeed to those items. Subsection (g)(6) adds nothing to them. Finally, nothing in the statutory language authorizes such a limited reading of (g)(6). Rather, read naturally, it simply contains other items of the debtor to which the estate succeeds, without limitation.

The Seventh Circuit's decision in *In the Matter of Kochell*, 804 F.2d 84 (7th Cir.1986) supports this Court' construction of § 1398 IRC, particularly subsection (f)(1). In *Kochell* the bankruptcy trustee distributed funds from an Individual Retirement Account to creditors. The trustee conceded that it owed income tax on the funds withdrawn from the account but disputed the IRS' assessment of the 10% withdrawal penalty provided for in 26 U.S.C. § 408(f)(1). Section 408 IRC imposed the penalty on "the individual for whose benefit such account or annuity was established." The bankruptcy trustee argued that the debtor was the individual benefitted and thus should be held liable for the penalty. The Seventh Circuit rejected this argument. In doing so the court relied on § 1398(f)(1), holding that when the debtor filed bankruptcy,

> the estate was thereafter 'treated as the debtor.' So when the Trustee invaded the IRA, the estate became liable for the income tax. For the same reasons the estate as 'the debtor'—and thus as the 'individual' under § 408(f)—became liable for the addition to tax. [ *Kochell*, 804 F.2d at 87.]

The same reasoning applies here. The debtor is the "taxpayer" referred to in § 121 IRC. Upon a sale of the Property, the estate will be liable for the consequent tax because it is "treated as the debtor." "For the same reasons the estate as 'the debtor'—and thus the ['taxpayer' under § 121 IRC—will become entitled to the exclusion]."

Finally, this interpretation of § 1398 IRC comports with underlying policies that inform statutory construction. The Seventh Circuit in *Kochell* reminded us that bankruptcy should "mirror non-bankruptcy entitlements," not change the characterization of a transaction. *Id* at 85. And, as the *Mehr* court pointed out, Congress enacted § 1398 IRC with the intent "to make tax considerations as neutral as possible in determining whether a taxpayer should file a bankruptcy petition." 153 B.R. at 439.

These policies would be defeated by denying the exclusion to the estate. A taxpayer with substantial unsecured debts and equity in a principal residence could sell the house and pay the debts, or it could be sold in a judgment lien foreclosure sale for the benefit of judgment creditors. Or, under the holdings in *Mehr* and *Barden*, he or she could file a bankruptcy petition before unsecured creditors got judgment liens, discharge the debts, require the trustee to abandon the house because of the tax liability without the exclusion, sell the house with no liability owed to the discharged creditors, use the exclusion, and pocket the tax free proceeds. That result would neither "mirror nonbankruptcy

entitlements" nor "make tax considerations as neutral as possible." It is therefore unlikely that Congress intended that result when it enacted § 1398 IRC. This Court's construction of the statute, however, is fully consistent with those Congressional policies, as well as the statutory language.

Accordingly, this Court finds that the because the estate succeeds to the holding period and character of the Property under § 1398(g)(6) IRC and because the estate is to be treated as the Debtor with respect to that asset under § 1398(f)(1) IRC, the estate is entitled to utilize the § 121 IRC exclusion upon the sale of a debtor's primary residence.

## CONCLUSION

This matter is before the Court on the Debtor's motion to compel the Trustee to abandon the Property. The Property, however, is subject to only the Debtor's $7,500 homestead exemption; his wife is not entitled to an exemption. Moreover, the estate will be able to take advantage of the § 121 IRC exclusion from taxes otherwise due upon the sale of the Property. For these reasons there is substantial equity in the Property, which, when sold, will permit a substantial dividend to creditors. The Property is therefore not burdensome to the estate, but is of significant value and benefit to the estate. For these reasons, an order will be entered denying the Debtor's motion.

### ORDER

For reasons set forth in the Memorandum Opinion of even date herewith, IT IS HEREBY ORDERED: that the Debtor's Motion to Compel Abandonment is denied.