**In re Adolfo and Lorenzo DiDARIO, Debtors.**

**Bankruptcy No. 98–31782.**

United States Bankruptcy Court, D. New Jersey.

March 24, 1999.

Forman Holt & Eliades L.L.C., Erin J. Kennedy, Rochelle Park, New Jersey, for Chapter 7 Trustee, Benjamin A. Stanziale, Jr.

tax lien is entitled to priority over whatever interest Chrysler may have had.

Michael H. Kessler, Union, New Jersey, for debtors.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### PROCEDURAL HISTORY

This case comes to the court as a motion to retain real estate broker and to compel debtors to cooperate with sale of property brought by the chapter 7 trustee, Benjamin A. Stanziale, Jr. ("Trustee"). Debtor filed a cross-motion for an order determining realty's value and directing chapter 7 trustee to abandon same. A hearing was scheduled for February 22, 1999. Counsel did not appear, but submitted on the record. Accordingly, the court reserved on the matter on that date and has rendered its decision based upon the submissions of the parties.

This court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. §§ 157(b)(2)(A), (B), and (K). See also Donaldson v. Bernstein, 104 F.3d 547 (3d Cir.1997). To the extent that there is a determination that this is a non-core matter, the within opinion shall constitute proposed findings of fact and conclusions of law and a report and recommendation pursuant to 28 U.S.C. § 157(c)(1).

### FACTS

Adolfo and Lorenza DiDario filed chapter 7 on February 14, 1998. Among debtors' assets is residential real estate located at 712 Drake Place, Westfield, New Jersey (the "Property"). The parties do not dispute that the debtors use this property as their primary residence. The parties disagree whether the property may be sold by the Trustee, or whether the Trustee should abandon the asset back to the debtors pursuant to 11 U.S.C. § 554(b). The Trustee contends that the property has value which, after liabilities and exemptions, would be available for distribution to the creditors. The debtors contend that after payment of all liabilities, which include capital gains tax, the property has no value to the estate and must be abandoned.

In 1976, the debtors purchased an undeveloped parcel of land for $7,000 in Westfield. The following year, debtor purchased an adjoining lot for $10,800. Upon these parcels, debtor personally constructed his home for $43,000 ($33,000 for the home and $10,000 for a street which became public property). The parties do not dispute that the basis for the property for federal tax purposes is $60,800. Nor do the parties contest that the property is assessed by the Westfield Tax Assessor at $318,150.

There is a first mortgage outstanding against the home in the amount of $147,-186.98. In addition, the debtors claim exemptions in the home of $31,180. The parties agree that 9% is the appropriate figure for costs of sale.

The debtor submitted a very thorough appraisal prepared by Michael J. Timoni, which indicated a fair market value for the property at $227,000. The appraisal employed the sales comparable approach to valuation, which is a widely recognized and standard methodology to real estate valuation. See In re 865 Centennial Avenue Associates, 200 B.R. 800 (Bankr.D.N.J. 1996) It contained a comprehensive explanation of the property as well as other comparable properties which sold in the same market. Consistent with valid appraisal methodology, the appraisal then adjusted the various comparables to account for differences in the properties and arrived at a weighted average. In re Custom Distribution Services, Inc., 216 B.R. 136, 148 (Bankr.D.N.J.1997);

The trustee submitted no information relating to the tax assessment and no evidence concerning the value of the real estate other than a reference to the tax assessment. Thus the court is unaware of the methodology employed by the tax assessor to arrive at his conclusion or the evidence upon which he based his conclusion.

The debtor contends that the equity in the property should be analyzed as follows:

| | |
|---|---|
| Fair Market Value of the Property: | $227,000.00 |
| Pay-off of first mortgage: | ($147,186.98) |
| Debtors' Exemptions: | ($ 31,180.00) |
| 9% Costs of Sale: | ($ 20,430.00) |
| Capital Gains Tax (20% of gain): | ($ 33,400.00) |
| | |
| Total charges against proceeds: | ($232,196.98) |
| | |
| EQUITY: | -$ 5,196.98 |

The trustee contends that the equity in the property should be analyzed as follows:

| | |
|---|---|
| Fair Market Value of the Property: | $318,150.00 |
| Pay-off of first mortgage: | ($147,186.98) |
| Debtors' Exemptions: | ($ 31,180.00) |
| 9% Costs of Sale: | ($ 20,430.00) |
| | |
| Total charges against proceeds: | ($198,796.98) |
| | |
| EQUITY: | +$119,354 (approx.) |

The trustee also argues that even if the property value is $227,000 there is still in excess of $28,000 in equity in the property because the trustee may not use the capital gains tax exclusion. The court must therefore determine two issues, first the fair market value of the property, and second, whether or not the trustee may take advantage of the debtors' rights under 26 U.S.C. § 121 to exclude the gain from their income, thus avoiding the 20% capital gains tax.

### DISCUSSION

### A. Fair Market Value

Pursuant to 11 U.S.C. § 554 "the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b).

■ The purpose of 11 U.S.C. § 554(b), under which the debtors are proceeding, "is to prevent a trustee from unnecessarily selling property without value to the estate merely in order to earn a commission." *In re Paolella*, 85 B.R. 974, 979 (Bankr. E.D.Pa.1988) (citing *In re K.C. Machine & Tool Co.*, 816 F.2d 238, 246 (6th Cir.1987)). As stated by the Sixth Circuit:

> Abandonment should only be compelled in order to help the creditors by assuring some benefit in the administration of

each asset. In dissent in *Midlantic National Bank v. New Jersey Dep't. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), Justice Rehnquist outlined the purposes of abandonment. "Abandonment is 'the release from the debtor's estate of property previously included in that estate.' ... [C]ourts had developed a rule permitting the trustee to abandon property that was worthless or not expected to *sell for a price sufficiently in excess of encumbrances to offset the costs of administration* ... [footnote and citation omitted]. This judge-made rule served the overriding purpose of bankruptcy liquidation: the expeditious reduction of the debtor's property to money, for equitable distribution to creditors."

816 F.2d 238, 246 (emphasis added).

■ In a motion brought pursuant to section 554(b), "it is the movant who must make out a prima facie case ... The movant's case can then be rebutted by evidence that the estate does have some equity in the property, including *inter alia* proof that the secured creditor's liens are or can be subordinated to an interest of the trustee." *In re Paolella*, 79 B.R. 607, 610 (Bankr.E.D.Pa.1987). Accordingly, this court must determine whether there is equity in the property.

The term "equity" is defined as "the difference between the value of the property and all encumbrances against it, including the interests of junior lienholders." *Matter of Cardell*, 88 B.R. 627, 631 (Bankr. D.N.J.1988).

The first step in determining equity is arriving at the value of the property. *Id.* As indicated by the Sixth Circuit in *In re K.C. Machine & Tool Co.*, 816 F.2d 238, 246 (6th Cir.1987), the court must determine the price at which the property would sell. *Id.* In this case debtor provided a full appraisal evidencing the fair market value of the property. The Trustee, on the other hand, provided no evidence concerning market value other than

a reference to the municipal property assessment, without a copy of that assessment, or an indication of the year of the assessment. Accordingly, the court finds that the value of the property is $227,000 as set forth in the appraisal.

The only other dispute between the parties with respect to equity is whether the Trustee may utilize the debtors' exclusion for capital gains tax under 26 U.S.C. § 121. If the Trustee may use that exclusion, then he would not have to pay capital gains tax and there would be equity in the property. In that case, the Trustee would not be required to abandon the property because there would be a benefit to the estate, namely proceeds available for distribution.

### Capital Gains Tax Exclusion

The debtor urges this court to find that the gain on the sale of the debtors' residence is not excluded from gross income of the Chapter 7 estate to the extent provided by 26 U.S.C. § 121, as amended by The Taxpayer Relief Act of 1997, Pub.L. No. 105–34, § 312(a), 111 Stat. 836–37 (Aug. 5, 1997). The debtor argues that another provision of the tax code, 26 U.S.C. § 1398(g), limits the applicability of section 121 to a bankruptcy estate.

Prior to the amendment of section 121, there was a prevailing view that a chapter 7 trustee could not use the capital gains tax exclusion which may have been available to the debtor personally. *See In re Mehr*, 153 B.R. 430 (Bankr.D.N.J.1993); *In re Barden*, 205 B.R. 451 (E.D.N.Y. 1996), *aff'd*, 105 F.3d 821 (2d Cir.1997). In 1997, section 121 was amended by the Taxpayer Relief Act of 1997 to expand the applicability of the gains tax exclusion.[1]

Since the amendment, the tide has turned. Starting with the seminal case, *In re Popa*, 218 B.R. 420 (Bankr.N.D.Ill.1998) and its progeny, *In re Munster*, 226 B.R. 632 (Bankr.E.D.Mo.1998); *In re Bradley*, 222 B.R. 313 (Bankr.M.D.Tenn.1998); and *In re Godwin*, 230 B.R. 341 (Bankr.S.D.Ohio 1999), the majority view now holds that the bankruptcy estate may avail itself of the capital gains tax exclusion to which the debtor may be entitled. (*But see, In re Winch*, 226 B.R. 591 (Bankr.S.D.Ohio 1998)).

The debtor argues that 26 U.S.C. § 1398 controls the treatment of income taxes for a bankruptcy estate. Section 1398 of the Internal Revenue Code provides:

(c) Computation and payment of tax; basic standard deduction.—

(1) Computation and payment of tax;—Except as otherwise provided in this section, the taxable income of the estate shall be computed in the same manner as for an individual. The tax shall be computed on such taxable income and shall be paid by the trustee.

\* \* \*

(3) Basic standard deduction.—In the case of an estate which does not itemize deductions, the basic standard deduction for the estate for the taxable year shall be the same as for a married individual filing a separate return for such year.

\* \* \*

(e) Treatment of income, deductions, and credits.—

(1) In general.—The amount of gain excluded from gross income under subsection (a) with respect to any sale or exchange shall not exceed $250,000.

. . . .

(f) Election to have section not apply.—This section shall not apply to any sale or exchange with respect to which the taxpayer elects not to have this section apply.

26 U.S.C. § 121 (as amended, Aug. 5, 1997).

1. 121. Exclusion of gain from sale of principal residence.

(a) Exclusion.—Gross income shall not include gain from the sale or exchange of property if, during the 5-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating 2 years or more.

(b) Limitations.—

(1) Estate's share of debtor's income.—The gross income of the estate for each taxable year shall include the gross income of the debtor to which the estate is entitled under title 11 of the United States Code. The preceding sentence shall not apply to any amount received or accrued by the debtor before the commencement date (as defined in subsection (d)(3)).

\* \* \*

(3) Rule for making determinations with respect to deductions, credits, and employment taxes.—Except as otherwise provided in this section, the determination of whether or not any amount paid or incurred by the estate—

(A) is allowable as a deduction or credit under this chapter, or

(B) is wages for purposes of subtitle C, shall be made as if the amount were paid or incurred by the debtor and as if the debtor were still engaged in the trades and businesses, and in the activities, the debtor was engaged in before the commencement of the case.

(f) Treatment of transfers between debtor and estate.—

(1) Transfer to estate not treated as disposition.—A transfer (other than by sale or exchange) of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be treated with respect to such asset.

\* \* \*

(g) Estate succeeds to tax attributes of debtor.—The estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—

\* \* \*

(6) Basis, holding period, and character of assets.—In the case of any asset acquired (other than by sale or exchange) by the estate from the debtor, the basis, holding period, and character it had in the hands of the debtor.

26 U.S.C. § 1398 (1994 & Supp.1997).

This court agrees with the majority view that the capital gains tax exclusion plainly falls within the meaning of section 1398(g). Subsection (g) permits the bankruptcy estate to step into the shoes of the debtor "in the case of any asset acquired (other than by sale or exchange by the estate from the debtor) the basis, holding period and character it had in the hands of the debtor." 26 U.S.C. § 1398(g)(6). In the case of capital gains tax, the trustee acquires the property (the debtor's residence) by operation of law (*see* 11 U.S.C. § 541), thus there is no sale or exchange by the debtor. In addition, the estate acquires the *basis, holding period and character*, the real property had in the hands of the debtor. 26 U.S.C. § 1398(g)(6). That language mirrors the exact elements necessary to make a determination as to whether the capital gains tax exclusion may be used in connection with a particular transaction. The *basis* determines whether there is a gain. The *holding period* (number of years in residence) and *character* (whether the property is used for a principal residence) determine whether the exclusion applies. *See* 26 U.S.C. § 121.

This court finds the reasoning on this point by Judge Barliant in *In re Popa*, 218 B.R. 420, to be compelling:

The authority for the estate's use of the § 121 IRC exclusion is provided by [I.R.C. § 1398]. Subsection (g)(6) provides that the estate succeeds to the Debtor's holding period. If the debtor has owned the property for the time required in § 121 IRC, the estate suc-

ceeds to that holding period. Next, § 1398(g)(6) provides that the estate succeeds to the "character" of the asset "it had in the hands of the debtor." "Character" is not defined by § 1398 IRC, but the characteristics of the Property relevant to the tax code include its use as a principal residence for at least two of the past five years. Those attributes constitute the "character it had in the hands of the debtor." Because the estate succeeds to those attributes, it qualifies to use the § 121 I.R.C. exclusion.

This conclusion is also compelled by § 1398(c)(1) and (f)(1). Subsection (c)(1) says that an estate is taxed like an individual. Subsection (f)(1) says that the transfer of property from the debtor to the estate is not a disposition for tax purposes, and "the estate shall be treated as the debtor would be with respect to such asset." When those provisions are read with subsection (g)(6), the only plausible conclusion is that the estate is liable for the same tax, and entitled to the same exclusion, as the debtor would be on the sale of the Property.

*In re Popa*, 218 B.R. at 426.

Prior case law had a very restrictive view of the concept of tax attributes of section 1398. *Bradley* addressed this position directly:

The government urges the position in *Mehr* and *Barden* that § 121 is the "equivalent of a tax attribute" which would have been specifically identified in § 1398(g) had Congress intended a bankruptcy estate to qualify for the exclusion. *Barden*, 205 B.R. at 455. The phrase "tax attribute" is not defined in the I.R.C. The phrase generally is used to refer to items that have continuing tax consequences for the entity in question. For example, accounting methods, NOL carry forwards, capital loss carryforwards, earnings and profits and credit carry forwards are typical relevant tax attributes.... In limited circumstances, tax attributes may survive even

though the entity to which they belong no longer exists. Matthew A. Melone, *Taxable Corporate Acquisitions: A Primer for Business and the Non–Specialist*, 25 U.TOL.L.REV. 673, 712 n. 23 (1994). Section 121 is an item specifically excluded from gross income, it is not a tax attribute. As *Popa* recognized, it is the attributes to which an estate succeeds under I.R.C. § 1398(g)(6)—"the Debtor's holding period ... [and] the 'character' of the asset ... 'in the hands of the debtor,'"—which qualify the estate "to use the § 121[ ] exclusion." *Popa*, 218 B.R. at 426.

222 B.R. at 317.

The lone post-amendment minority view case, *In re Winch*, 226 B.R. at 593, found it significant that section 1398 was not amended along with section 121. *Id.* In so noting, the *Winch* court found that the two sections should be read together. Such a reading would preclude the trustee's use of the capital gains tax exclusion. *Id.* Since this court finds, however, that section 1398 does *not* limit the applicability of section 121, but rather permits the trustee to stand in the shoes of the debtor with respect to a capital gains tax exclusion, that argument becomes moot because section 1398 would not need modification to permit the exclusion.

In finding that section 1398(g) permits the estate to use the capital gains tax exclusion, the majority view departed from prior case law, and *In re Winch*, 226 B.R. at 593, "in part [due to] the [1997] amendments to § 121, but primarily [to the] Court's disagreement with the analysis of § 1398 applied by the other courts." *Popa*, 218 B.R. at 426.

The amendments to section 121 reinforced the applicability of capital gains tax exclusion to bankruptcy estates by removing the 55 year age requirement for the taxpayer resident. In addition, the amendments removed the requirement that the taxpayer elect the exclusion. *See* 26 U.S.C. § 121(a) (1994 and Supp.1996)

(*prior statute* ). Now, the taxpayer automatically receives the benefits of section 121 unless the taxpayer waives it. In addition, age has been eliminated as a condition, the taxpayer is permitted more than one use of the exclusion, the amount of the exclusion has been increased and the holding period has been reduced to two years. *See* 26 U.S.C. § 121, as amended by The Taxpayer Relief Act of 1997, Pub.L. No. 105–34, § 312(a), 111 Stat. 836–37 (Aug. 5, 1997). *See also In re Bradley,* 222 B.R. at 315–16. Thus many of the hurdles which the bankruptcy trustee previously had to overcome have been eliminated by the amendments. (*Accord In re Bradley,* 222 B.R. at 316) ("[T]he 1997 amendments to § 121 undermine the policy arguments in *Mehr* and *Barden* against use of the exclusion by a bankruptcy trustee." *Id.*)

The *Bradley* court also analogized the applicability of capital gains tax exclusion to reported cases interpreting other aspects of section 1398:

That the exclusion in § 121 is available to a bankruptcy estate is consistent with reported cases interpreting other aspects of § 1398. For example, with respect to a bankruptcy estate's gross income, § 1398 provides that "each taxable year [gross income] shall include the gross income of the debtor to which the estate is entitled under title 11 of the United States Code[,]" which amount does not include "any amount received or accrued by the debtor before the commencement date...." I.R.C. § 1398(e)(1) (emphasis added). The estate's gross income is in part derivative of the debtor's gross income. *See Erickson v. United States (In re Bentley),* 916 F.2d 431, 432 (8th Cir. 1990). An "estate [becomes] entitled to any unrealized gain to which the debtor would have been entitled upon commencement of the bankruptcy proceedings under sections 1398(g) and 1398(e)(1)." *Id.* at 432. *See also Sticka v. United States (In re Sturgill),* 217 B.R. 291, 295 (Bankr.D.Or.1998) ("Congress has ... determined that tax liability arising from income items such as unrealized gain on property of the estate shall be borne by the estate, even if the gain may be said to have accrued prepetition."). Where the unrealized gain would not have been included in the debtor's gross income upon realization, § 1398(e)(1) compels the same treatment of the realized gain in the hands of the estate. This theme continues in I.R.C. § 1398(e)(3) which "states that the determination of whether or not any amount paid by the estate is deductible shall be made as if the amount were paid or incurred by the debtor, and as if the debtor were still engaged in the trades and businesses, and in the activities, the debtor was engaged in before the commencement of the case." *In re Vale,* 204 B.R. 716, 745 (Bankr.N.D.Ind.1996). *See also Sturgill,* 217 B.R. at 296 ("[T]he trustee steps into the shoes of the debtor with respect to questions regarding deductions, credits, and employment taxes."). Section 1398 effects for the bankruptcy estate, the same tax consequence that would befall the debtor outside of bankruptcy. *See Popa,* 218 B.R. at 427 (citing *In re Kochell,* 804 F.2d 84, 85 (7th Cir.1986)).

222 B.R. at 316

The view that capital gains tax exclusion applies to bankruptcy estates is consistent with the liberal approach taken by the Revenue Rulings[2] concerning decedent's estates and certain trusts. In those rulings, the Internal Revenue Service appeared to be concerned with the relationship between the estate and the prior

---

**2.** "Although a revenue ruling is not entitled to the deference accorded a statute or a Treasury Regulation, a revenue ruling is entitled to some deference unless it conflicts with the statute it supposedly interprets or with that statute's legislative history or if it is otherwise unreasonable." *CenTra, Inc. v. United States,* 953 F.2d 1051, 1056 (6th Cir.1992) (internal quotations and citations omitted).

owner of the property and whether the prior owner fulfilled the requirements of section 121. *See* Revenue Ruling 82–1, 1982–1 C.B. 1. In addition, it is noteworthy, that in arriving at such decision, the Internal Revenue Service specifically overruled prior Revenue Rulings which advocated a more restrictive view of section 121. *Id.* This court is convinced, as were the *Bradley* court, 222 B.R. at 316 and the *In re Godwin* court, 230 B.R. 341, that the differences between a bankruptcy estate and a decedent's estate for purposes of section 121 are distinctions without a difference.

From a policy point of view, this court is persuaded by the majority view. As noted by the Seventh Circuit, "[b]ankruptcy ordinarily mirrors such non-bankruptcy entitlements; it is just a collective proceeding among creditors to apportion limited assets. Nothing about the bankruptcy process changes the appropriate characterization of the turnover of money held in a trust such as an IRA." *In re Kochell,* 804 F.2d 84, 85 (7th Cir.1986). In the context of capital gains tax exclusions, *Bradley* noted:

> [T]o allow a bankruptcy estate to exclude gain from the sale of a debtor's residence promotes the public interest in a responsible bankruptcy system and does not frustrate any clearly defined federal policy. *Popa* explained: A taxpayer with substantial unsecured debts and equity in a principal residence could sell the house and pay the debts, or it could be sold in a judgment lien foreclosure sale for the benefit of judgment creditors. Or, under the holdings in *Mehr* and *Barden,* he or she could file a bankruptcy petition before unsecured creditors got judgment liens, discharge the debts, require the trustee to abandon the house because of the tax liability without the exclusion, sell the house with no liability owed to the discharged creditors, use the exclusion, and pocket the tax free proceeds. That result would neither "mirror nonbankruptcy

entitlements" nor "make tax consideration as neutral as possible."

222 B.R. at 317–18.

Finally, it should be noted that under the prior law, the exclusion of capital gains for a personal residence was limited to one transaction. If the trustee utilized that transaction, the debtor/taxpayer would lose the benefit in later years. *See In re Mehr,* 153 B.R. 430 (Bankr.D.N.J.1993). When Congress eliminated the one time limitation, it removed that policy consideration, and allowed the statute to operate whether or not a trustee uses the exemption. The result of this change is consistent with the view that for the purposes of capital gains taxes, the trustee has the same rights as the debtor as an individual.

**CONCLUSION**

For all of the above reasons, this court finds that section 1398 does not operate to limit applicability of section 121 to the bankruptcy estate. Accordingly, pursuant to 26 U.S.C. § 1398(g)(6), the chapter 7 trustee succeeds to the attributes of the debtor for purposes of the capital gains tax exclusion. Thus the gain realized upon the sale of the debtors' residence does not result in income to the estate pursuant to 26 U.S.C. § 121 and the automatic exclusion from capital gains tax applies to the trustee. The estate is not liable for capital gains tax. Thus there is equity in the home and the trustee is not required to abandon the Property pursuant to 11 U.S.C. § 554(b). Trustee should submit an Order in accordance with this opinion within ten (10) days.