**In re Freda BRADLEY, Debtor.**

**Bankruptcy No. 396–09677.**

United States Bankruptcy Court,
M.D. Tennessee.

July 16, 1998.

Robert H. Waldschmidt, Howell & Fisher, P.L.L.C., Nashville, TN, for trustee.

John R. Keenan, Special Asst. U.S. Atty., Edgar M. Rothschild, Nashville, TN, for debtor.

### MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The issue is whether gain on the sale of the Debtor's residence is excluded from gross income of this Chapter 7 estate to the extent provided by I.R.C. § 121, as amended by The Taxpayer Relief Act of 1997, Pub.L. No. 105–34, § 312(a), 111 Stat. 836–37 (Aug. 5, 1997). The section 121 exclusion is available to the bankruptcy estate.

### I. FACTS

Freda Bradley filed Chapter 13 on October 28, 1996. On April 4, 1997, her case converted to Chapter 7. The Chapter 7 Trustee sold the Debtor's residence on October 3, 1997, resulting in a gain of $77,106.

On the bankruptcy estate's 1997 income tax return, the Trustee declared the gain on the sale of the Debtor's residence but excluded the gain from income pursuant to I.R.C. § 121. By letter dated February 13, 1998, the Internal Revenue Service rejected the estate's return "pending a determination regarding the position you have taken on the I.R.C. Section 121 exclusion."

The Trustee filed a Motion for Determination of Tax Liability pursuant to 11 U.S.C. § 505(b). The Trustee asserts that I.R.C. § 121, as amended by The Taxpayer Relief Act of 1997,[1] excludes from income gain on the sale of a debtor's residence by a Chapter 7 trustee if the debtor would have qualified for the exclusion had the debtor sold the property. The Internal Revenue Service responds that the § 121 exclusion is personal to the debtor and not available to a bankruptcy estate. Without the exclusion, the estate's tax liability will be $12,045.

### II. DISCUSSION

Section 1398 of the Internal Revenue Code fixes these rules for calculating

---

1. That the Debtor's case was pending at the passage of The Taxpayer Relief Act of 1997 has not been addressed by any party. The IRS and the Trustee have briefed and argued only the amended version of I.R.C. § 121.

income taxes for an individual Chapter 7 debtor's estate:

(c) Computation and payment of tax; basic standard deduction.—

(1) Computation and payment of tax.—Except as otherwise provided in this section, the taxable income of the estate shall be computed in the same manner as for an individual. The tax shall be computed on such taxable income and shall be paid by the trustee.

. . . .

(3) Basic standard deduction.—In the case of an estate which does not itemize deductions, the basic standard deduction for the estate for the taxable year shall be the same as for a married individual filing a separate return for such year.

. . . .

(e) Treatment of income, deductions, and credits.—

(1) Estate's share of debtor's income.—The gross income of the estate for each taxable year shall include the gross income of the debtor to which the estate is entitled under title 11 of the United States Code. The preceding sentence shall not apply to any amount received or accrued by the debtor before the commencement date (as defined in subsection (d)(3)).

. . . .

(3) Rule for making determinations with respect to deductions, credits, and employment taxes.—Except as otherwise provided in this section, the determination of whether or not any amount paid or incurred by the estate—

(A) is allowable as a deduction or credit under this chapter, or

(B) is wages for purposes of subtitle C,

shall be made as if the amount were paid or incurred by the debtor and as if the debtor were still engaged in the trades and businesses, and in the activities, the debtor was engaged in before the commencement of the case.

(f) Treatment of transfers between debtor and estate.—

(1) Transfer to estate not treated as disposition.—A transfer (other than by sale or exchange) of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be treated with respect to such asset.

. . . .

(g) Estate succeeds to tax attributes of debtor.—The estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—

. . . .

(6) Basis, holding period, and character of assets.—In the case of any asset acquired (other than by sale or exchange) by the estate from the debtor, the basis, holding period, and character it had in the hands of the debtor.

I.R.C. § 1398 (1994 & Supp.1997).

A plain reading of I.R.C. § 1398 entitles the Chapter 7 estate of an individual debtor to exclude from gross income the gain on the sale of a residence if that gain would have been excluded were the taxpayer the debtor. Section 1398(c) states that "taxable income of the estate shall be computed in the same manner as for an individual." Taxable income "means gross income minus the deductions allowed by this chapter (other than the standard deduction)." I.R.C. § 63(a). "Gross income" is defined in I.R.C. § 61 as "all income from whatever source derived" except as provided in I.R.C. §§ 101 – 139.[2] Sections 101 through 139 contain "items specifically excluded from gross income." Sec-

---

**2.** Section 61 of the Internal Revenue Code provides:

(a) General definition.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

. . . .

(b) Cross references.—For items specifically included in gross income, see part II (sec. 71 and following). *For items specifically excluded from gross income, see part III (sec. 101 and following).*

I.R.C. § 61 (emphasis added).

tion 121 excludes from gross income the gain on the sale of a personal residence under certain circumstances:

**121. Exclusion of gain from sale of principal residence.**

(a) Exclusion.—Gross income shall not include gain from the sale or exchange of property if, during the 5–year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating 2 years or more.

(b) Limitations.—

(1) In general.—The amount of gain excluded from gross income under subsection (a) with respect to any sale or exchange shall not exceed $250,000.

. . . .

(f) Election to have section not apply.— This section shall not apply to any sale or exchange with respect to which the taxpayer elects not to have this section apply.

I.R.C. § 121 (as amended, Aug. 5, 1997).

There is no dispute that this Debtor would be entitled to the § 121 exclusion had this residence been sold by the Debtor rather than by the Chapter 7 Trustee. Section 1398(c) compels the same tax treatment of the sale by the bankruptcy estate. Section 1398(f)(1) confirms that "the estate shall be treated as the debtor would be treated" with respect to an asset that transfers from the debtor to the bankruptcy estate. I.R.C. § 1398(f)(1).

Other courts have concluded that I.R.C. § 1398 entitles an individual Chapter 7 estate to the § 121 exclusion. *See In re Popa,* 218 B.R. 420 (Bankr.N.D.Ill.1998); *see also In re Munster,* Case No. 97–51313–293, slip op. (Bankr.E.D.Mo. June 12, 1998) (sustaining Chapter 13 trustee's objection to confirmation on ground that best interests of creditors test includes gain on sale of debtors' residence available to Chapter 7 trustee pursuant to I.R .C. § 121). As explained by Judge Barliant in *Popa:*

> The authority for the estate's use of the § 121 IRC exclusion is provided by [I.R.C. § 1398]. Subsection (g)(6) provides that the estate succeeds to the Debtor's holding period. If the debtor has owned the property for the time required in § 121 IRC, the estate succeeds to that holding period. Next, § 1398(g)(6) provides that the estate succeeds to the "character" of the asset "it had in the hands of the debtor." "Character" is not defined by § 1398 IRC, but the characteristics of the Property relevant to the tax code include its use as a principal residence for at least two of the past five years. Those attributes constitute the "character it had in the hands of the debtor." Because the estate succeeds to those attributes, it qualifies to use the § 121 I.R.C. exclusion.
>
> This conclusion is also compelled by §§ 1398(c)(1) and (f)(1). Subsection (c)(1) says that an estate is taxed like an individual. Subsection (f)(1) says that the transfer of property from the debtor to the estate is not a disposition for tax purposes, and "the estate shall be treated as the debtor would be with respect to such asset." When those provisions are read with subsection (g)(6), the only plausible conclusion is that the estate is liable for the same tax, and entitled to the same exclusion, as the debtor would be on the sale of the Property.

*Popa,* 218 B.R. at 426 (footnote omitted).

*Popa* declined to follow two pre–1997 decisions that denied use of the § 121 exclusion by a bankruptcy estate. See *In re Barden,* 205 B.R. 451 (E.D.N.Y.1996), *aff'd mem.,* 105 F.3d 821 (2d Cir.1997) (per curiam); *In re Mehr,* 153 B.R. 430 (Bankr.D.N.J.1993). *Popa* attributed its different result "in part [to] the [1997] amendments to § 121[ ], but primarily [to the] Court's disagreement with the analysis of [I.R.C.] § 1398[ ] applied by the other courts." *Popa,* 218 B.R. at 426.

Prior to the Taxpayer Relief Act of 1997, I.R.C. § 121 recognized a one time exclusion from gross income of up to $125,000 of gain for taxpayers 55 years of age and older on the sale of property used as the taxpayers' principal residence for three of the past five years. The exclusion required election by the taxpayer. I.R.C. § 121(a) (1994 and Supp.1996). The Taxpayer Relief Act of 1997 expanded the exclusion in § 121. The Act eliminated age as a condition, permitted

more than one use of the exclusion during a taxpayer's lifetime, increased the amount of the exclusion, reduced the residential use period to two years, and made the exclusion automatic.

*Popa* accurately observes that the 1997 amendments to § 121 undermine the policy arguments in *Mehr* and *Barden* against use of the exclusion by a bankruptcy trustee. More importantly, *Popa*'s construction of I.R.C. § 1398 is true to the plain meaning of the words in that section, gives effect to all of its subsections, and avoids the dead spots and lapses of logic created by the construction in *Mehr* and *Barden. Popa*, 218 B.R. at 426–27.

■ That the exclusion in § 121 is available to a bankruptcy estate is consistent with reported cases interpreting other aspects of § 1398. For example, with respect to a bankruptcy estate's gross income, § 1398 provides that "each taxable year [gross income] shall include the *gross income of the debtor* to which the estate is entitled under title 11 of the United States Code[,]" which amount does not include "any amount received or accrued by the debtor before the commencement date...." I.R.C. § 1398(e)(1) (emphasis added). The estate's gross income is in part derivative of the debtor's gross income. *See Erickson v. United States (In re Bentley)*, 916 F.2d 431, 432 (8th Cir.1990). An "estate [becomes] entitled to any unrealized gain to which the debtor would have been entitled upon commencement of the bankruptcy proceedings under sections 1398(g) and 1398(e)(1)." *Id.* at 432. *See also Sticka v. United States (In re Sturgill)*, 217 B.R. 291, 295 (Bankr.D.Or.1998) ("Congress has ... determined that tax liability arising from income items such as unrealized gain on property of the estate shall be borne by the estate, even if the gain may be said to have accrued prepetition."). Where the unrealized gain would not have been included in the debtor's gross income upon realization, § 1398(e)(1) compels the same treatment of the realized gain in the hands of the estate. This theme continues in I.R.C. § 1398(e)(3) which "states that the determination of whether or not any amount paid by the estate is deductible shall be made as if the amount were paid or incurred by the debtor, and as if the debtor were still engaged in the trades and businesses, and in the activities, the debtor was engaged in before the commencement of the case." *In re Vale*, 204 B.R. 716, 745 (Bankr.N.D.Ind.1996). *See also Sturgill*, 217 B.R. at 296 ("[T]he trustee steps into the shoes of the debtor with respect to questions regarding deductions, credits, and employment taxes."). Section 1398 effects for the bankruptcy estate, the same tax consequence that would befall the debtor outside of bankruptcy. *See Popa*, 218 B.R. at 427 (citing *In re Kochell*, 804 F.2d 84, 85 (7th Cir.1986)).[3]

Use of the § 121 exclusion by a Chapter 7 estate is consistent with the position taken by the IRS with respect to decedents' estates. In Revenue Ruling[4] 82–1, 1982–1 C.B. 11, the IRS concluded: "The gain from the sale

---

**3.** In *Kochell*, the Seventh Circuit addressed "whether the penalty tax under 26 U.S.C. § 408(f)(1) applies to a bankruptcy trustee's withdrawal of funds from the debtor's Individual Retirement Account...." *Kochell*, 804 F.2d at 84–5. The statute provided that a distribution "from an [IRA] ... to the individual for whose benefit such account or annuity was established ... before such individual attains age 59½" triggered an extra tax or early withdrawal penalty. I.R.C. § 408(f)(1). The court observed, "[b]ankruptcy ordinarily mirrors such non-bankruptcy entitlements; it is just a collective proceeding among creditors to apportion limited assets. Nothing about the bankruptcy process changes the appropriate characterization of the turnover of money held in a trust such as an IRA." *Kochell*, 804 F.2d at 85. "[I]f Kochell had turned over his IRA to a creditor outside of bankruptcy, or a creditor had attached the account ..., the turnover would have been treated as a distribution to Kochell followed by Kochell's payment of his debts." *Id. Kochell* found support in I.R.C. § 1398(f)(1) for its reading that a distribution "to the individual" included distribution "to the bankruptcy estate." Since section 1398(f)(1) directs that the estate be "treated as the debtor," "the estate as 'the debtor' became liable for the addition to tax." *Id.* at 86.

**4.** "Although a revenue ruling is not entitled to the deference accorded a statute or a Treasury Regulation, a revenue ruling is entitled to some deference unless it conflicts with the statute it supposedly interprets or with that statute's legislative history or if it is otherwise unreasonable." *CenTra, Inc. v. United States*, 953 F.2d 1051, 1056 (6th Cir.1992) (internal quotations and citations omitted).

of the decedent's personal residence is excludable to the extent provided under section 121 of the Code if the election is made by the executor on a decedent's final Federal Income Tax Return (Form 1040)." Rev.Rul. 82–1, 1982–1 C.B. 11. The Service resolved:

> Consistent with the extension of rights and privileges accorded a fiduciary under section 6903, the executor may "stand in the shoes" of the decedent for purposes of making the election under section 121, with respect to the sale of the residence....

*Id.* This conclusion, the Service observed, was consistent with the Tax Code provisions that fiduciaries "assume the power, rights, duties and privileges of such other person," and "that the character of income in respect of a decedent is to be determined by reference to the character of such income in the decedent's hands had the decedent lived." *Id.* (citing I.R.C. §§ 691(a)(3) & 6903 (1982)).

The *Barden* court conceded that analogy to this Revenue Ruling was "an interesting one," but concluded "in the Court's view it does not recognize important distinctions between a decedent's estate and a bankruptcy estate." *Barden,* 205 B.R. at 454. Those important differences, *Barden* stated, are the bankruptcy trustee's obligations to creditors to maximize their distribution from the estate, the existence of two taxable entities in the debtor and the estate, and the potential conflict between the estate and the debtor upon the former's use of the (then) one time exclusion.

These differences are not compelling. The potential conflict between the estate and the debtor/taxpayer was eliminated by the 1997 amendments to § 121. That there will be two taxpayers, the debtor and the bankruptcy estate, presents no obvious mark of distinction. There is no possibility of double accounting because the exclusion follows the property into the bankruptcy estate. Both a bankruptcy trustee and an executor of an estate are fiduciaries; both are obligated to

obtain the maximum return for their beneficiaries. The principal beneficiaries of a decedent's estate may be the decedent's creditors.

The government urges the position in *Mehr* and *Barden* that § 121 is the "equivalent of a tax attribute" which would have been specifically identified in § 1398(g) had Congress intended a bankruptcy estate to qualify for the exclusion. *Barden,* 205 B.R. at 455.

> The phrase "tax attribute" is not defined in the I.R.C. The phrase generally is used to refer to items that have continuing tax consequences for the entity in question. For example, accounting methods, NOL carry forwards, capital loss carryforwards, earnings and profits and credit carry forwards are typical relevant tax attributes.... In limited circumstances, tax attributes may survive even though the entity to which they belong no longer exists.

Matthew A. Melone, *Taxable Corporate Acquisitions: A Primer for Business and the Non–Specialist,* 25 U.Tol.L.Rev. 673, 712 n. 23 (1994).Section 121 is an item specifically excluded from gross income, it is not a tax attribute. As *Popa* recognized, it is the attributes to which an estate succeeds under I.R.C. § 1398(g)(6)—"the Debtor's holding period ... [and] the 'character' of the asset ... 'in the hands of the debtor,'" —which qualify the estate "to use the § 121[ ] exclusion." *Popa,* 218 B.R. at 426.[5]

Finally, to allow a bankruptcy estate to exclude gain from the sale of a debtor's residence promotes the public interest in a responsible bankruptcy system and does not frustrate any clearly defined federal policy. *Popa* explained:

> A taxpayer with substantial unsecured debts and equity in a principal residence could sell the house and pay the debts, or it could be sold in a judgment lien foreclosure sale for the benefit of judgment credi-

---

**5.** *Mehr, Popa* observed, read subsection (g)(6) to only supplement the trustee's use of other tax attributes enumerated in § 1398(g). *Popa* appropriately disagreed because none of the attributes listed in § 1398(g)(1)–(5), (7)–(8) require consideration of the attributes recognized in subsection (g)(6)—holding period, basis or character. Each

attribute enumerated in § 1398(g)(1)–(5) is available to the estate without regard to subsection (g)(6). Subsection (g)(6), *Popa* concluded, "simply contains other items of the debtor to which the estate succeeds, without limitation." *Popa,* 218 B.R. at 427.

tors. Or, under the holdings in *Mehr* and *Barden,* he or she could file a bankruptcy petition before unsecured creditors got judgment liens, discharge the debts, require the trustee to abandon the house because of the tax liability without the exclusion, sell the house with no liability owed to the discharged creditors, use the exclusion, and pocket the tax free proceeds. That result would neither "mirror nonbankruptcy entitlements" nor "make tax consideration as neutral as possible."

*Id.* at 427–28.

### III. CONCLUSION

The gain on the sale of an individual Chapter 7 debtor's residence is excluded from gross income of the debtor's bankruptcy estate to the extent provided by I.R.C. § 121. The Trustee's use of the § 121 exclusion on the estate's 1997 federal tax return was proper.