In re Stephen WINCH, Kathleen Winch, Debtors.

Bankruptcy No. 97–13768.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Sept. 3, 1998.

Stephen M. Meiser, Cincinnati, Ohio, for Plaintiff.

Harold Jarnicki, Lebanon, Ohio, for Defendant.

## ORDER RE: DEBTORS' MOTION FOR ORDER DETERMINING NON–EXEMPT EQUITY IN CERTAIN REAL ESTATE

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court on the Debtors' Motion for an Order Determining the Non–Exempt Equity in the Real Estate Located at 4922 Assisi Lane Available for

Distribution to the Unsecured Creditors (Doc. 16), the United States' Response (Doc. 17), and the Trustee's Response (Doc. 19). A hearing was held on July 21, 1998.

The Court has jurisdiction over this matter by virtue of 28 U.S.C. § 1334 and the general order of reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).

The issue before the Court is whether the chapter 7 Trustee may exclude the capital gain from the sale of the Debtors' residence under I.R.C. § 121. The competing interests are three-fold. The United States wants to maximize the taxes paid under the Internal Revenue Code. The Debtors want to maximize their incidents of ownership to the extent possible under the Bankruptcy Code. The Trustee wants to maximize distributions to the Debtors' unsecured creditors.

The Debtors filed their chapter 7 petition on June 16, 1997. The Debtors' residence has a fair market value of approximately $100,000.[1] Using an estimated sale price of $95,000 and taking into account the first and second mortgages of $56,400 and $8,300 respectively, a 7 to 10 % cost of sale allocation, the Debtors' exemption of $10,000[2], and an approximate capital gain tax of $10,000[3], there would be approximately $3,000 generated from the sale of the property for distribution to the unsecured creditors. It is questionable whether the Trustee would choose to sell the property for this relatively minimal distribution amount. However, if the Trustee did not have to pay the capital gain tax, this would "free up" an additional $10,000 available for distribution and justify the sale of the property.[4]

Prior to 1997, I.R.C. § 121 ("old I.R.C. § 121") read as follows:

(a) General rule. At the election of the taxpayer, gross income does not include gain from the sale or exchange of property if—(1) the taxpayer has attained the age of 55 before the date of the sale or exchange, and (2) during the 5–year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as his principal residence for period aggregating 3 years or more.

Old I.R.C. § 121 had a dollar limitation of $125,000 and was applicable to only one sale or exchange by a taxpayer or his spouse.

Pursuant to the Taxpayer Relief Act of 1997, Pub.L. No. 105–34, August 5, 1997, I.R.C. § 121 ("amended I.R.C. § 121") was amended to read as follows:

(a) Exclusion. Gross income shall not include gain from the sale or exchange of property if, during the 5–year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating 2 years or more.

Amended I.R.C. § 121 has a dollar limitation of $250,000 and is limited to one sale or exchange every two years.

The other applicable tax code section, I.R.C. § 1398, was not amended in 1997. It continues to read in pertinent part:

(g) Estate succeeds to tax attributes of debtor. The estate shall succeed to and take into account the following items ... of the debtor—

(1) Net operating loss carryovers. The net operating loss carryovers determined under section 172.

(2) Charitable contributions carryovers. The carryover of excess charitable contributions determined under section 170(d)(1).

---

1. The Court does not make a finding of the actual fair market value of the property because such a factual finding is not necessary to the determination of the legal issue before the Court.

2. The Court notes that this issue would not arise in states with an unlimited homestead exemption.

3. The Trustee calculated this tax amount using a sale price of $95,000 and a cost basis of $58,900.

4. The Trustee contends that not selling the house allows the Debtors to "walk away with approximately $30,000 worth of equity." Doc. 19, p. 2. This contention is somewhat misleading since the $30,000 amount is composed of the Debtors' $10,000 exemption, the $ 10,000 cost of sale, and the $10,000 capital gain tax.

(3) Recovery of tax benefit items. Any amount to which section 111 ... applies.

(4) Credit carryovers, etc. The carryovers of any credit, and all other items which, but for the commencement of the case, would be required to be taken into account by the debtor with respect to any credit.

(5) Capital loss carryovers. The capital loss carryover determined under section 1212.

(6) Basis, holding period, and character of assets. In the case of any asset acquired ... by the estate from the debtor, the basis, holding period, and character it had in the hands of the debtor.

(7) Method of accounting. The method of accounting used by the debtor.

(8) Other attributes. Other tax attributes of the debtor, to the extent provided in regulations prescribed by the Secretary as necessary or appropriate to carry out the purposes of this section.

■ At the hearing, the United States contended that this Court did not have jurisdiction over the issue because the real property had not yet been sold, therefore, there was no case or controversy. We disagree, choosing to follow *In re Popa, see infra,* in that regard. 218 B.R. at 423–25.

Prior to the 1997 amendment to I.R.C. § 121, the courts directly addressing this issue held that the trustee was not allowed to use the capital gain exclusion of I.R.C. § 121. *See In re Barden,* 205 B.R. 451 (E.D.N.Y. 1996) *aff'd* 105 F.3d 821 (2nd Cir.1997); *In re Mehr,* 153 B.R. 430 (Bankr.D.N.J.1993); *see also In re Young,* 153 B.R. 886 (Bankr. D.Neb.1993) (capital gain tax liability that would be incurred in hypothetical liquidation of debtor's assets had to be considered for purpose of determining best interest of creditors test under chapter 13). Following the 1997 amendment to I.R.C. § 121, the two reported decisions on this issue, *In re Popa,* 218 B.R. 420 (Bankr.N.D.Ill.1998) (appeal pending) and *In re Bradley,* 222 B.R. 313 (Bankr.M.D.Tenn.1998) (Lundin, J.), held that the trustee could avail himself of the exclusion for the benefit of the estate. Contrary to the courts in *In re Popa* and *In re Bradley,* we believe that the rationale of *In re Mehr,* as followed by *In re Barden,* is still valid.

■ It is a well established principle that exclusions from taxation are to be strictly interpreted against the taxpayer. *In re Mehr,* 153 B.R. at 432–33. The taxpayer must point to the specific provision of the Internal Revenue Code which clearly authorizes an exclusion. *Id.* at 433 (citations omitted). Although the 1997 amendment removed some of the "individual" attributes of old I.R.C. § 121, i.e., the age requirement and the one-time election requirement, the critical "individual" attribute remains, namely, that the exclusion is available only for the taxpayer who has resided in the subject property as his principal residence for at least two of the past five years.

■ It is also a well established principle of statutory construction that statutes *in pari materia,* or statutes on the same matter or subject, are to be construed together. It is, therefore, necessary to read I.R.C. § 121 and I.R.C. § 1398 together to resolve the pending issue. Also, because the language of these two statutes is not plain, especially when the two statutes are read together, *compare In re Mehr,* 153 B.R. at 433 (focus is on "plain" language of I.R.C. § 121) *with In re Bradley,* 222 B.R. at 316 (focus is on "plain" language of I.R.C. § 1398), it is appropriate to look beyond the language of the statutes and focus on the underlying policies.

■ The policy of old I.R.C. § 121 was to make funds available for living expenses during an individual's retirement years. *See In re Mehr,* 153 B.R. at 434 (citing H.R. 749, 88th Cong., 2d Sess. (1964)). The legislative history of the 1997 amendment indicates that there were several reasons for the changes to old I.R.C. § 121. First, the $125,000 threshold of old I.R.C. § 121 created record-keeping requirements for the taxpayer, i.e., calculation of the cost basis, often for decades, that were thought to be too burdensome. Second, the one-time exclusion of old I.R.C. § 121 encouraged taxpayers to purchase larger and more expensive homes only to avoid a taxable event, thereby promoting an inefficient use of a taxpayer's financial resources. Third, both the $125,000 limit and

the one-time exclusion of old I.R.C. § 121 discouraged some older taxpayers from selling their homes and created an unwanted constraint of the mobility of the elderly. Fourth, the one-time exclusion of old I.R.C. § 121 had the unintended effect of penalizing a taxpayer who married an individual who had already taken the exclusion. *See* H.R.Rep. No. 148, 105th Cong., 1st Sess. at 760–62 (1997). The legislative history shows that the policy of old I.R.C. § 121 has survived and been expanded upon in amended I.R.C. § 121 and supports a holding that it is the individual taxpayer and not the bankruptcy estate that should be eligible for the exclusion.[5]

 We agree with the position taken in *In re Mehr* that I.R.C. § 1398(g) provides an exhaustive list of attributes that the estate receives from the debtor. 153 B.R. at 437 (followed by *In re Barden*, 205 B.R. at 455 and *In re Rueter*, 158 B.R. 163, 167 (N.D.Cal. 1993) (regarding passive activity loss)); *see also In re Antonelli*, 1992 WL 403097 at *2 (Bankr.D.Md.1992) (regarding passive activity loss); *DiStasio v. United States*, 22 Cl.Ct. 36, 52 (1990) (regarding claim of right). I.R.C. § 1398(g) lists numerous specific tax attributes of the debtor relating to specific sections of the Internal Revenue Code to which the estate succeeds. I.R.C. § 121 is not listed. Nor has the Secretary promulgated any regulations under I.R.C. § 1398(g)(8) which would bring I.R.C. § 121 within the ambit of I.R.C. § 1398(g). *See In re Mehr*, 153 B.R. at 437. The fact that I.R.C. § 1398(g) was not amended as a conforming amendment along with the changes to I.R.C. § 121 in the Taxpayer Relief Act of 1997 affords an even stronger argument that the estate should not succeed to the capital gain exclusion available to the individual taxpayer.

The court in *In re Popa* reasoned that since under I.R.C. § 1398(g)(6) the estate succeeds to the "character" of the asset in the hands of the debtor, the estate may be said to have used the property as a principal residence for at least two of the last five years. 218 B.R. at 426. We respectfully disagree. This Court reasons that it takes more than one general word in I.R.C. § 1398(g)(6) to open the door so widely to the I.R.C. § 121 exclusion. This conclusion is supported by the rule that exclusions are to be strictly construed against the taxpayer and the rule that the taxpayer must point to the specific provision of the tax code which authorizes an exclusion. *See In re Mehr*, 153 B.R. at 432–33. Furthermore, under *In re Popa's* broad interpretation of the term "character" in I.R.C. § 1398(g)(6), the estate would succeed to every tax attribute of the debtor and there would have been no reason for Congress to specify the attributes it did so specify in I.R.C. § 1398(g)(1) through (g)(5) or to allow for the Secretary to prescribe additional tax attributes as provided in I.R.C. § 1398(g)(8). As we interpret I.R.C. § 1398(g)(6), that subsection is to insure that when the estate *pays* a tax or is *otherwise* properly allowed a tax "break" that the tax or tax "break" is properly calculated. *See In re Perlman*, 188 B.R. 704, 708 (Bankr. S.D.Fla.1995).

In *In re Kochell*, 804 F.2d 84 (7th Cir. 1986), the Seventh Circuit held that the bankruptcy estate rather than the debtor was responsible for paying the penalty tax for the trustee's early withdrawal of the debtor's IRA. Contrary to the Court in *In re Popa*, we find that *In re Kochell* is inapplicable to the issue at hand. First, the issue in *In re Kochell* did not involve the capital gain exclusion of I.R.C. § 121. Second, the issue in *In re Kochell* was which of two entities, the trustee or the debtor, was the proper party to pay a tax; it did not involve whether an exclusion was going to be taken (the "nonpayment" of a tax). Third, *In re Kochell* was grounded in equity, as evidenced by the Court's statement that there was "no good reason" for the trustee to pay the income tax and not the penalty tax on the early withdrawal. 804 F.2d at 86–87.

The court in *In re Bradley* reasons that because I.R.C. § 121 creates an exclusion from *income*, and because I.R.C. § 1398(c)

---

**5.** The Courts in *In re Popa* and *In re Bradley* did not address the legislative history of amended § 121.

states that "taxable *income* of the estate shall be computed in the same manner as for an individual" (emphasis added), that the estate is compelled to receive the same tax treatment as the individual taxpayer. This conclusion, which at first appears convincing, fails to take into consideration I.R.C. § 1398(g), which subsection specifically addresses the tax *attributes* of the debtor to which the estate succeeds. The *In re Bradley* court concludes that the capital gain exclusion is not a tax attribute. *See* 222 B.R. at 317. We respectfully disagree. The term "tax attribute" is undefined in the I.R.C. We believe that a tax attribute is simply a legal construct that flows from a certain series of events.[6] Because of the unique series of events that are conditions precedent to the I.R.C. § 121 capital gain exclusion—that the property must have been used by the taxpayer as a residence for a certain period of time—we find that the capital gain exclusion of I.R.C. § 121 is not available to the estate.

Although it may appear unfair to the unsecured creditors for the trustee to bypass the sale of a debtor's residence because of the trustee's need to pay the capital gain tax and other expenses associated with the sale, it is not within the purview of this Court to rewrite the Internal Revenue Code. *See In re Mehr,* 153 B.R. at 438; *In re Barden,* 205 B.R. at 455-56.

For the reasons set forth above, we find that the Trustee may not exclude the capital gain from the sale of the Debtors' residence under I.R.C. § 121. The Trustee is left with the business decision of whether to sell the Debtors' residence under these circumstances.

IT IS SO ORDERED.

---

6. This is not inconsistent with the definition of tax attributes as "items that have continuing tax consequences for the entity in question" referenced in *In re Bradley,* 222 B.R. at 317 (citation omitted).