**In re George T. KERR, Debtor.**

**No. C98–1149WD.**

United States District Court,
W.D. Washington,
at Seattle.

Feb. 9, 1999.

Diane E. Tebelius, U.S. Attorney's Office, Seattle, WA, Deirdre A. Donnelly, U.S. Department of Justice, Tax Division, Washington, DC, for appellant.

Peter H. Arkison, Bellingham, WA, trustee.

## ORDER ON APPEAL FROM BANKRUPTCY COURT'S ORDER

DWYER, District Judge.

■ This is an appeal from an order of the United States Bankruptcy Court for the Western District of Washington holding that a bankruptcy estate owes no additional taxes, penalties or interest. In so holding, the court ruled that the gain on the sale of an individual Chapter 7 debtor's residence is excluded from gross income of the debtor's bankruptcy estate to the extent provided by 26 U.S.C. § 121.[1] The bankruptcy court entered a final order on August 10, 1998. The United States filed a timely notice of appeal on August 17, 1998. The court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a). The questions of law presented are subject to de novo review. *Matter of Lockard,* 884 F.2d 1171, 1174 (9th Cir.1989).

The facts are not in dispute. On May 28, 1997, the debtor, George Kerr, filed a petition for relief under Chapter 7 of the Bankruptcy Code. The Chapter 7 trustee sold the debtor's real property for $59,000. The sale closed on November 14, 1997. The debtor had resided on the property for at least two years before he sought Chapter 7 relief and was living there when he filed his bankruptcy petition.

The Chapter 7 trustee filed a 1997 Form 1041 (U.S. Income Tax Return for Estates and Trusts) for the bankruptcy estate with the Internal Revenue Service ("IRS"). The IRS determined that the gain on the sale of the debtor's residence was improperly excluded from the bankruptcy estate's income and assessed additional taxes against the estate.

The trustee filed with the bankruptcy court a motion to determine tax liability. The court considered briefs from the trustee and the United States and held a hearing on August 7, 1998. In holding that the trustee's use of the Section 121 exclusion was proper, the court stated that it agreed with the reasoning set forth in the recent cases *In re Popa,* 218 B.R. 420 (Bankr. N.D.Ill.1998), *appeal pending* (N.D.Ill.), and *In re Bradley,* 222 B.R. 313 (M.D.Tenn.1998) *appeal pending* (M.D.Tenn.). Accordingly, the court ruled that no additional taxes, penalties, and interest are owed by the bankruptcy estate. This appeal followed.

■ Prior to the Taxpayer Relief Act of 1997, Pub.L. No. 105–34, 111 Stat. 788 (1997) ("the Act"), Section 121 of the Internal Revenue Code ("the Code") provided that a taxpayer over 55 years of age was entitled to a one-time exclusion from gross income of $125,000 on the sale of the taxpayer's residence if the taxpayer had used the property as his or her personal residence for three of the last five years. The Act amended Section 121 to allow an exclusion of $250,000 and to extend the exclusion to more taxpayers.[2] Notably, the

---

1. Two similar appeals, involving the same question of law, are also pending in this district. *See In re Sevy,* Bankruptcy No. 97–03835, District Court No. C98–1148Z and *In Re Cooper,* Bankruptcy No. 97–08414, District Court No. C98–1150Z.

2. Section 121 of the Code provides in relevant part as follows: "(a) Exclusion.—Gross income shall not include gain from the sale or exchange of property if, during the 5–year period ending on the date of the sale or exchange, such property has been owned and

amendment eliminated the age requirement and the limitation to a one-time exclusion.

The relevant guidelines for the taxation of a Chapter 7 bankruptcy estate are set out in 26 U.S.C. § 1398 as follows:

(c)(1) Except as otherwise provided by this section, the taxable income of the [Chapter 7 bankruptcy] estate shall be computed in the same manner as for an individual. The tax shall be computed on such taxable income and shall be paid by the trustee.

. . . . .

(f)(1) A transfer (other than by sale or exchange) of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be with respect to such asset. .

. . . . .

(g) Estate Succeeds to Tax Attributes of Debtor.—The estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—

(1) Net operating loss carryovers. The net operating loss carryovers determined under section 172.

(2) Charitable contributions carryovers. The carryover of excess charitable contributions determined under section 170(d)(1).

(3) Recovery of tax benefit items. Any amount to which section 111 ... applies.

(4) Credit carryovers, etc. The carryovers of any credit, and all other items which, but for the commencement of the case, would be required to be taken into account by the debtor with respect to any credit.

used by the taxpayer as the taxpayer's principal residence for periods aggregating 2 years

(5) Capital loss carryovers. The capital loss carryover determined under section 1212.

(6) Basis, holding period, and character of assets.—In the case of any asset acquired (other than by sale or exchange) by the estate from the debtor, the basis, holding period, and character it had in the hands of the debtor..

(7) Method of accounting. The method of accounting used by the debtor.

(8) Other attributes. Other tax attributes of the debtor, to the extent provided in regulations prescribed by the Secretary as necessary or appropriate to carry out the purposes of this section.

The bankruptcy courts in *Popa* and *Bradley* concluded that § 1398 permits a bankruptcy estate to take the § 121 exclusion. They held that the plain meaning of §§ 1398(c)(1) and (f)(1) provides one basis for this conclusion. The court in *Bradley* stated:

A plain reading of I.R.C. § 1398 entitles the Chapter 7 estate of an individual debtor to exclude from gross income the gain on the sale of a residence if that gain would have been excluded were the taxpayer the debtor. Section 1398(c) states that "taxable income of the estate shall be computed in the same manner as for an individual." Taxable income "means gross income minus the deductions allowed by this chapter (other than the standard deduction)." I.R.C. § 63(a). "Gross income" is defined in I.R.C. § 61 as "all income from whatever source derived" except as provided in I.R.C. §§ 101—139. Sections 101 through 139 contain "items specifically excluded from gross income." Section 121 excludes from gross income the gain on the sale of a personal residence ....

222 B.R. at 314–15; *see also Popa,* 218 B.R. at 426. Moreover, under § 1398(f)(1)

or more."

the estate is to be "treated as the debtor would be with respect to" any asset transferred from the debtor to the estate. *Popa* and *Bradley* concluded that the plain language of these subsections shows that the estate is entitled to any exclusions to which the debtor would have been entitled.[3]

The bankruptcy court in *In re Winch*, 226 B.R. 591 (Bkrtcy.S.D.Ohio 1998), decided against allowing the estate to claim the exemption, as did two reported decisions that considered the issue under the prior version of Section 121. *See In re Mehr*, 153 B.R. 430 (Bankr.D.N.J.1993); *In re Barden*, 205 B.R. 451 (E.D.N.Y. 1996), *aff'd*, 105 F.3d 821 (2nd Cir.1997) (per curiam). Those courts emphasized that exclusions from taxation are to be construed narrowly against the taxpayer. *See, e.g., Bingler v. Johnson*, 394 U.S. 741, 751–52, 89 S.Ct. 1439; 22 L.Ed.2d 695 (1969). The courts focused on the more specific provisions of § 1398(g) rather than on the general language of §§ 1398(c)(1) and (f)(1).

Citing those decisions, appellant argues that § 1398(c)(1) "simply allows" the bankruptcy estate to be taxed under the tax code's provisions for income tax (Subchapter A), rather than the regular provisions for the taxation of estates (Subchapter J). Similarly, it contends that § 1398(f)(1) merely provides guidance on how to treat transfers of assets from the debtor to the estate and does not provide for the use of exclusions by the estate. Finally, appellant argues that because rules of statutory construction require that specific statutory provisions control over general provisions,

*HCSC–Laundry v. U.S.*, 450 U.S. 1, 6, 101 S.Ct. 836, 67 L.Ed.2d 1 (1981), and statutes must be interpreted so as to give effect to all their provisions, *Mountain States Telephone and Telegraph, Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985), the court must look to § 1398(g) to determine whether the § 121 exclusion is an enumerated tax attribute to which the estate succeeds.

The court in *Winch* concluded that § 1398(g) "provides an exhaustive list of attributes that the estate receives from the debtor." 226 B.R. at 594. In holding that the section does not permit an estate to claim the § 121 exclusion, the *Winch* court noted that there was no express reference to the exclusion in § 1398(g) and that there have been no regulations promulgated under § 1398(g)(8) which incorporate § 121. *Id.* The bankruptcy courts in *Popa* and *Bradley*, in contrast, concluded that eligibility for exclusion of capital gains was part of the residential "character" of the debtor's real property asset. *Popa*, 218 B.R. at 426; *Bradley*, 222 B.R. at 316. Under Subsection (g)(6), the estate would succeed to this characteristic of the asset. The *Popa* court stated:

> Subsection (g)(6) provides that the estate succeeds to the Debtor's holding period. If the debtor has owned the property for the time required in § 121 IRC, the estate succeeds to that holding period. Next, § 1398(g)(6) provides that the estate succeeds to the "character" of the asset "it had in the hands of the debtor." "Character" is not defined by

---

**3.** The Seventh Circuit's decision in *In the Matter of Kochell*, 804 F.2d 84 (7th Cir.1986), offers support for this construction of § 1398(f)(1). In *Kochell* the bankruptcy trustee distributed funds from an Individual Retirement Account to creditors. The trustee conceded that the estate owed income tax on the funds withdrawn from the account but disputed the IRS's assessment of the 10% withdrawal penalty provided for in 26 U.S.C. § 408(f)(1). That section imposed the penalty

following a distribution to "the individual for whose benefit such account or annuity was established." The trustee argued that the debtor was that individual and thus should be held liable for the penalty. The Seventh Circuit rejected this argument, concluding that, under § 1398(f)(1), when the debtor filed bankruptcy the estate was thereafter "treated as the debtor." Thus, when the trustee invaded the IRA, the estate became liable for the penalty. *Kochell*, 804 F.2d at 87.

§ 1398 IRC, but the characteristics of the Property relevant to the tax code include its use as a principal residence for at least two of the past five years. Those attributes constitute the "character it had in the hands of the debtor." Because the estate succeeds to those attributes, it qualifies to use the § 121 IRC exclusion.

*Popa,* 218 B.R. at 426; *see also Bradley,* 222 B.R. at 316.

 The reasoning of the *Popa* and *Bradley* courts is persuasive. Since the estate succeeds to the character of the debtor's assets, it is entitled to the § 121 exclusion from income. This interpretation of § 1398 comports with the policies underlying the bankruptcy statute. As the Seventh Circuit noted in *Kochell,* "Bankruptcy ordinarily mirrors such non-bankruptcy entitlements; it is just a collective proceeding among creditors to apportion limited assets." 804 F.2d at 85. And, as the *Mehr* court recognized, Congress enacted § 1398 with the intent "to make tax considerations as neutral as possible in determining whether a taxpayer should file a bankruptcy petition." 153 B.R. at 439. These policies would be defeated by denying the exclusion to the estate.

For the reasons stated, the order of the bankruptcy court is affirmed.

The clerk is directed to send copies of this order to all counsel of record and to the Hon. Samuel J. Steiner.