**In re Stanley C. ST. FRANCIS, Debtor.**

**Neil C. Gordon, Trustee, Movant,**

v.

**United States of America, Respondent.**

**Bankruptcy No. 97–60313.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 9, 1999.

Neil C. Gordon, Macey, Wilensky, Cohen, Wittner, Atlanta, GA, trustee.

Ann Reid, U.S. Dept. of Justice-Tax Division, Washington, DC, for Defendant.

## ORDER

MARGARET H. MURPHY,
Bankruptcy Judge.

This case is before the court on Trustee's motion for determination of tax liability. The facts are undisputed. Both Trustee and Respondent ("IRS") have filed memoranda of law. For the reasons set forth below, this court concludes Trustee is entitled to compute the estate's tax liability using 26 U.S.C. § 121 to exclude the capital gain on the estate's interest in residential real property liquidated by the Chapter 7 Trustee.

## STATEMENT OF FACTS

This case commenced January 6, 1997. On August 19, 1997, Trustee sold Debtor's residence, which was titled jointly with Debtor's wife, for the approximate sum of $928,000. The estate's one-half interest in the sale proceeds, after costs and expenses, was $440,467. That residence had been purchased by Debtor and his wife in 1988. The adjusted basis of the estate's one-half interest in the residence is $175,-158. Therefore, the potential capital gain

from the sale of the estate's one-half interest in the residence is $265,309. After payment of liens and expenses of sale, Trustee is holding $168,000, approximately $84,000 of which must be disbursed to Mrs. St. Francis, less her share of prepetition *ad valorem* taxes on the residence. If the estate is liable for taxes on the full amount of the capital gain, the estate's tax liability will be $42,906.

For the purpose of determining the estate's tax liability, Trustee seeks to exclude $250,000 of the capital gain pursuant to 26 U.S.C. § 121, as amended in 1997. IRS disallowed the exclusion and argues that the § 121 exclusion may be used only by individual taxpayers and is not available to Trustee to reduce the estate's tax liability.

## DISCUSSION

Prior to 1997, § 121 of the Tax Code allowed a one-time exclusion of up to $125,-000 from capital gains tax liability upon the sale of a taxpayer's residence.[1] To be entitled to that exclusion, the taxpayer was required to meet certain requirements: the taxpayer must be more than 55 years old; the taxpayer must affirmatively elect to use the exclusion; the real property sold must have been used by the taxpayer as a residence for three of the last five years; the amount of the exclusion was limited to $125,000 per couple; and the exclusion could be used only once during the lifetimes of the couple.[2] The pre–1997 one-time exclusion worked together with the provision that a taxpayer could exclude the capital gain on the sale of residence if the amount of the gain was rolled over into the purchase of a new residence within two years. The result was that a taxpayer was required to maintain for many years, in most cases for decades, records to establish the cost basis of the real estate for as long as the taxpayer rolled over the gains in order to establish the adjusted basis when the taxpayer finally took advantage of the onetime exclusion after the age of 55. Additionally, a practical result was that a taxpayer was forced to purchase progressively more expensive real estate to maximize the benefits of the exclusion.

Only two cases regarding a Chapter 7 Trustee's eligibility for the § 121 exclusion were decided under the pre–1997 version of § 121. In both cases, the courts concluded the Chapter 7 Trustee was not eligible

1. The pre–1997 version of § 121 provided:

    **§ 121. One-time exclusion of gain from sale of principal residence by** individual who has attained age 55
    (a) **General rule.**—At the election of the taxpayer, gross income does not include gain from the sale or exchange of property if—
    (1) the taxpayer has attained the age of 55 before the date of such sale or exchange, and
    (2) during the 5–year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as his principal residence for periods aggregating 3 years or more.
    (b) **Limitations.**—
    (1) **Dollar limitation.**—The amount of the gain excluded from gross income under subsection (a) shall not exceed $125,000 ($62,500 in the case of a separate return by a married individual).
    (2) **Application to only 1 sale or exchange.**—Subsection (a) shall not apply to any sale or exchange by the taxpayer if an election by the taxpayer or his spouse under subsection (a) with respect to any other sale or exchange is in effect.
    (3) **Additional election if prior sale was made on or before July 26, 1978.**—In the case of any sale or exchange after July 26, 1978, this section shall be applied by not taking into account any election made with respect to a sale or exchange on or before such date.
    (c) **Election.**—An election under subsection (a) may be made or revoked at any time before the expiration of the period for making a claim for credit or refund of the tax imposed by this chapter for the taxable year in which the sale or exchange occurred, and shall be made or revoked in such manner as the Secretary shall by regulations prescribe. In the case of a taxpayer who is married, an election under subsection (a) or a revocation thereof may be made only if his spouse joins in such election or revocation.

2. For example, an individual who had not used the exclusion but who married an individual who had used the exclusion was not entitled to the exclusion.

for the § 121 exclusion. In the case of *In re Mehr*, 153 B.R. 430 (Bankr.D.N.J.1993), the court, relying upon the rule of strict construction of exclusions under the federal tax laws, determined that the Chapter 7 Trustee could satisfy neither the age nor residence requirement of § 121. The court concluded only individuals could satisfy those requirements and that Congress intended only an individual would be allowed to elect the exclusion, not a bankruptcy Trustee. In the case of *In re Barden*, 205 B.R. 451 (E.D.N.Y.1996), *aff'd*, 105 F.3d 821 (2d Cir.1997), concurring with the decision in *Mehr*, the court denied the § 121 exclusion to the Trustee. The court also noted that the purpose of § 121 was to provide tax relief to individuals over age 55 and promote savings for retirement years and that, because § 121 provided a one-time-only exclusion, allowing use of the exclusion by a Chapter 7 Trustee would deprive the taxpayer/debtor of the exclusion in the future in connection with sale of post-bankruptcy acquired property.

In 1997, Congress amended § 121 and eliminated several significant requirements for the exclusion of capital gains upon the sale of residence.[3] The age limitation was removed and the election requirement was removed. Additionally, the amount of the exclusion was increased to $250,000 and the once-in-a-lifetime provision was changed to once-every-two-years.[4] The legislative history shows that the purpose of the 1997 amendment to § 121 was to remove the burdensome record-keeping requirements; to erase the incentive to purchase ever larger and more expensive houses which promotes inefficient use of a taxpayer's financial resources; to withdraw the disincentive to selling a home which no longer suits an individual's needs because he or she has already used the one-time exclusion; and to eliminate the tax traps in § 121 for couples and persons who move from a high-housing-cost area to a low-housing cost area. H.R.Rep. 105–148, 105th Cong., 1st Sess.1997 (1997 WL 353016). Although not specifically stated in the legislative history, the removal of the age requirement appears to remove the earlier focus of § 121 on tax relief and incentives specifically designed only for the retirement-aged taxpayers.

Under § 121 as amended in 1997, a taxpayer now need only show that the property was used as a residence during two of the last five years. Trustee argues that he succeeds to this requirement pursuant to 26 U.S.C. § 1398.[5] Few cases have been

---

**3.** The 1997 amendment to § 121 provides:

§ 121. Exclusion of gain from sale of principal residence

**(a) Exclusion.**—Gross income shall not include gain from the sale or exchange of property if, during the 5–year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating 2 years or more.

. . .

**(b) Limitations.**—

**(1) In general.**—The amount of gain excluded from gross income under subsection (a) with respect to any sale or exchange shall not exceed $250,000.

**(2) Special rules for joint returns.**—In the case of a husband and wife who make a joint return for the taxable year of the sale or exchange of the property—

**(A) $500,000 limitation for certain joint returns.**—Paragraph (1) shall be applied by substituting "$500,000" for "$250,000" if.—

**(i)** either spouse meets the ownership requirements of subsection (a) with respect to such property;

**(ii)** both spouses meet the use requirements of subsection (a) with respect to such property; and

**(iii)** neither spouse is ineligible for the benefits of subsection (a) with respect to such property by reason of paragraph (3).

**4.** Additionally, the residence requirement was changed from three of the last five years to two of the last five years; and each spouse is eligible for the exclusion within certain limitations not relevant to this case.

**5.** The relevant portions of § 1398 provide:

§ 1398. Rules relating to individuals' title 11 cases

**(a) Cases to which section applies.**—Except as provided in subsection (b), this section shall apply to any case under chapter 7 (relating to liquidations) or chapter 11 (relating to reorganizations) of title 11 of the

decided on this issue since the 1997 amendments but the majority of those decisions favor the Trustee.

In the first of those cases, *In re Popa,* 218 B.R. 420 (Bankr.N.D.Ill.1998), *aff'd w/o op.,* Case No. 1:98–CV–0271 (N.D.Ill, 3/31/99), the debtor had moved to compel the Chapter 7 trustee to abandon the estate's interest in the debtor's residence and the trustee requested the bankruptcy court to determine pursuant to 11 U.S.C. § 505 the estate's tax liability. In *Popa,* the net equity in the residence after allowing for the debtor's statutory exemption, the costs of sale and the trustee's fee, was $8,581.80, which would provide a 45% distribution to unsecured creditors. If the trustee were not allowed to avail himself of the § 121 exclusion, the tax on the capital gain would be more than $12,000. As a consequence, if the § 121 exclusion was not available to the trustee, he would abandon the property to the debtor, the debtor would receive his discharge, unsecured creditors and the trustee would receive nothing, and debtor could sell the residence, exclude the gain, and retain the full net equity in the residence tax free and free of his discharged creditors' claims.

The *Popa* court noted that the rule of strict construction as to exemptions and exclusions does not apply to the court's determination of whether the § 121 attributes to pass to the estate via § 1398. In discussing § 1398, the court pointed out that, pursuant to § 1398(g)(6), the trustee succeeds to the holding period and "character" the asset had in the hands of the debtor. Although the IRS argued the term "character" should be construed narrowly to refer to the character as long-term or short-term capital asset, the court

---

United States Code in which the debtor is an individual.

. . .

(c) **Computation and payment of tax; basic standard deduction.**—

(1) **Computation and payment of tax.**—Except as otherwise provided in this section, the taxable income of the estate shall be computed in the same manner as for an individual. The tax shall be computed on such taxable income and shall be paid by the trustee.

. . .

(f) **Treatment of transfers between debtor and estate.**—

(1) **Transfer to estate not treated as disposition.**—A transfer (other than by sale or exchange) of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be treated with respect to such asset.

(2) **Transfer from estate to debtor not treated as disposition.**—In the case of a termination of the estate, a transfer (other than by sale or exchange) of an asset from the estate to the debtor shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the debtor shall be treated as the estate would be treated with respect to such asset.

(g) **Estate succeeds to tax attributes of debtor.**—The estate shall succeed to and

take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—

(1) **Net operating loss carryovers.**—The net operating loss carryovers determined under section 172.

(2) **Charitable contributions carryovers.**—The carryover of excess charitable contributions determined under section 170(d)(1).

(3) **Recovery of tax benefit items.**—Any amount to which section 111 (relating to recovery of tax benefit items) applies.

(4) **Credit carryovers, etc.**—The carryovers of any credit, and all other items which, but for the commencement of the case, would be required to be taken into account by the debtor with respect to any credit.

(5) **Capital loss carryovers.**—The capital loss carryover determined under section 1212.

(6) **Basis, holding period, and character of assets.**—In the case of any asset acquired (other than by sale or exchange) by the estate from the debtor, the basis, holding period, and character it had in the hands of the debtor.

(7) **Method of accounting.**—The method of accounting used by the debtor.

(8) **Other attributes.**—Other tax attributes of the debtor, to the extent provided in regulations prescribed by the Secretary as necessary or appropriate to carry out the purposes of this section. . . .

concluded that because "character" is not defined in the Tax Code, it should be given its ordinary meaning, which would include an asset's use as a principal residence. As further support, the court noted that § 1398(c)(1) and (f)(1) evidence legislative intention that the estate's tax liability should be calculated no differently than the individual debtor's would be.

The *Popa* court distinguished both *Mehr,* 153 B.R. 430, and *Barden,* 205 B.R. 451, first on the basis of the 1997 amendment to § 121, but primarily on the basis of a different interpretation of § 1398. The 55–year age requirement under the pre–1997 law was a requirement to which the estate could not succeed, and thus, the removal of that requirement removed an impediment to the Trustee's use of the exclusion. Additionally, the 1997 amendment eliminates the policy argument based upon depriving the debtor of a once-in-a-lifetime exclusion because the exclusion may be reused every two years.

The *Popa* court, however, also disagreed with the *Mehr* and *Barden* narrow interpretation of § 1398. The *Popa* court noted that neither of the earlier decisions included any meaningful discussion of § 1398(f)(1), which provides that as to any particular asset of the estate, the estate is treated as the debtor would be treated with respect to such asset. Additionally, the *Popa* court concluded that the limitation placed upon the effect of § 1398(g)(6) by the decisions in *Mehr* and *Barden* failed to accord that subsection its full effect. Specifically, § 1398(g)(6) does not help the trustee take advantage of the § 1398(g)(1)–(5) items and so limiting the application of (g)(6) renders it superfluous. Nothing in the statute supports such a narrow reading, whereas its plain meaning supports a broader interpretation.

The *Popa* court also relied upon the decision in the case of *In re Kochell,* 804 F.2d 84 (7th Cir.1986). In *Kochell,* the court held that the trustee's premature withdrawal of funds from the debtor's IRA for the benefit of the debtor's creditors rendered the estate liable for the 10% penalty tax. The *Popa* court concluded that, just as the estate is liable for tax because it is treated as the individual debtor, the estate should be entitled to the § 121 exclusion. The court described the underlying policy consideration that the bankruptcy system should mirror as closely as possible non-bankruptcy entitlements to make tax considerations as neutral as possible in determining whether an individual should file a bankruptcy petition. The *Popa* court concluded the trustee would be entitled to the § 121 exclusion and denied the debtor's motion to compel abandonment.

The next decision which addressed the issue was *In re Munster,* 226 B.R. 632 (Bankr.E.D.Mo.1998). In that case, the Chapter 13 Trustee objected to confirmation of the debtor's plan on the grounds that the plan distributed less to creditors than they would receive in a Chapter 7 liquidation. The debtors had calculated their payments to unsecured creditors under their Chapter 13 plan based upon the hypothetical sale of the residence on which the Chapter 7 trustee would be required to pay capital gains tax. The court concluded that a Chapter 7 trustee would be allowed to exclude the capital gain from the sale of the debtors' residence and, therefore, the debtors' plan would not satisfy the liquidation analysis. In a brief opinion which cited only *Mehr* and *Barden,* the court determined that the 1997 amendment to § 121 militated a result different from those in *Mehr* and *Barden* because § 1398(g)(6) allowed a Chapter 7 trustee to succeed to the "character" of the asset as a residence.[6]

The next case in which this issue was considered is *In re Bradley,* 222 B.R. 313 (Bankr.M.D.Tenn.1998) (J. Lundin). The *Bradley* court notes that § 1398(c)(1) provides that "the taxable income of the estate shall be computed in the same manner

6. The IRS was not a party in *Munster.*

as for an individual." As the debtor would be entitled to the exclusion if the debtor had sold the residence, § 1398(c)(1) compels the same tax treatment for the estate. The court states that § 1398(f)(1) confirms this conclusion. The *Bradley* court cites with approval the *Popa* court's conclusion that the 1997 amendments to § 121 undermine the policy arguments in *Mehr* and *Barden* against allowing the exclusion to a bankruptcy trustee. Additionally, *Bradley* concurs in the discussion of § 1398 in the *Popa* case, stating *Popa*'s construction of § 1398 is "true to the plain meaning of the words of that section, gives effect to all of its subsections, and avoids the dead spots and lapses in logic created by the construction in *Mehr* and *Barden*." *Id.* at 316.

The *Bradley* court also noted that allowing a Chapter 7 trustee the § 121 exclusion is consistent with the IRS' position in Revenue Ruling 82-1, 1982-1 C.B. 11, in which the IRS concluded the executor of a decedent's estate may use § 121 to exclude the capital gain on the sale of the decedent's former residence. *Bradley* explains that the differences between the executor of a decedent's estate and a Chapter 7 trustee, as distinguished by the *Barden* court, are not compelling and the similarities are more significant. The executor and the trustee are both fiduciaries with an obligation to maximize return for its respective beneficiaries. That the executor's beneficiaries are the heirs and the trustee's beneficiaries are the unsecured creditors is a distinction without a difference.

Finally, the *Bradley* court agreed with *Popa*'s conclusions that the tax attributes described in § 1398(g)(6) were not intended merely to supplement the trustee's use of the other attributes enumerated in § 1398(g), especially as none of the attributes listed in § 1398(g)(1)–(5) and (7)–(8) require consideration of the attributes described in § 1398(g)(6). The *Bradley* court closed with the statement that, "To allow a bankruptcy estate to exclude gain from the sale of a debtor's residence pro-

motes the public interest in a responsible bankruptcy system and does not frustrate any clearly defined federal policy." *Id.* at 317.

The only post–1997 amendment case to depart from the result that the trustee is entitled to the § 121 exclusion is *In re Winch*, 226 B.R. 591 (Bankr.S.D.Ohio 1998). The *Winch* court opined that the rationales in *Mehr* and *Barden* remain valid, despite the 1997 amendment to § 121:

> Although the 1997 amendment removed some of the "individual" attributes of old I.R.C. § 121, i.e., the age requirement and the one-time election requirement, the critical "individual" attribute remains, namely, that the exclusion is available only for the taxpayer who has resided in the subject property as his principal residence for at least two of the past five years.

*Id.* at 593. To support that conclusion, the court noted that the legislative history of § 121 shows that the former policy behind § 121—to benefit the individual—survived and has merely been expanded. Section 1398(g), the court states, is an exhaustive list of attributes the bankruptcy estate receives from the debtor and Congress' failure to conform § 1398 to the amended § 121 indicates § 1398 is not intended to apply to § 121. The court opines that "it takes more than one general word in I.R.C. § 1398(g)(6) ['character'] to open the door so widely to the I.R.C. § 121 exclusion." *Id.* at 594.

The most recent case addressing the § 121 issue is *In re Godwin*, 230 B.R. 341 (Bankr.S.D.Ohio 1999). The court in *Godwin* adopted the conclusions set forth in *Popa* and *Bradley*:

> ... [Section] 1398 contains many references to treating the estate the same as the taxpayer upon the sale of real property. Consistent with that policy, the Court finds that the use of real property as a residence constitutes a character of that asset. This is different than the Trustee asserting that the Debtors satisfied an age requirement, therefore he

too satisfies that age requirement. The character of the asset itself, a character to which the Trustee succeeds under § 1398(g)(6), allows the sale to qualify for the § 121 Exclusion.

*Id.* at 345. The *Godwin* court recognized that the practical effect of allowing the § 121 exclusion to a bankruptcy trustee would endorse the policies underlying the bankruptcy system:

> To hold otherwise would create additional tax liability due solely to a bankruptcy filing, and will dissuade bankruptcy trustees from selling non-exempt assets that would otherwise benefit the estate. This would, in effect, provide chapter 7 debtors with a hidden exemption outside of the state or federal exemption statutes, and a windfall to the detriment of the estate as a whole.

*Id.* at 346.

The opinions in *Popa, Bradley, Munster,* and *Godwin* are persuasive. Under the prior version of § 121, depriving an individual debtor of a once-in-a-lifetime exclusion of the capital gain the sale of a residence was inequitable and conflicted with the policy underlying § 121. Although the policy behind § 121 may not have significantly changed, the elimination of the one-time-only availability of the exclusion eliminated the inequity of allowing the exclusion to a Chapter 7 Trustee. Instead, denying to Trustee the § 121 exclusion would create the potential for a debtor to use the bankruptcy system to abuse unsecured creditors, including those with avoidable judicial liens, and collect a tax-free, debt-free windfall. Logic suggests that if an individual debtor wishes to and can afford to retain the principal residence with significant equity, the debtor can propose and perform under a Chapter 13 plan of reorganization to pay unsecured creditors the amount of the non-exempt equity. Additionally, allowing the § 121 exclusion to a Chapter 7 Trustee will eliminate the risk to the trustee that a debtor will lack records to establish the correct adjusted basis for the debtor's residence. Finally,

use of an asset as a principal residence is within the plain meaning of "character" in § 1398(g). Accordingly, it is hereby

ORDERED that Trustee's motion is granted: Trustee, on behalf of the bankruptcy estate, is entitled to use the exclusion from income set forth in 26 U.S.C. § 121. The tax return filed by Trustee is proper and correct and Trustee has no additional administrative tax liability to the Internal Revenue Service for the short tax year which began January 6, 1997 and ended August 31, 1997.

IT IS SO ORDERED.